THE PEOPLE *ex rel.* A. H. Bell

*v.*

CHARLES S. ZANE, Circuit Judge.

*Filed at Springfield March 29, 1883.*

1. MANDAMUS—*jurisdiction of Supreme Court—change of venue.* This court has jurisdiction to hear and decide an application for a writ of *mandamus* against a circuit judge, to direct him to try a defendant for an alleged crime on a change of venue from another county.

2. COURTS—*power to vacate and amend their orders and records during term.* The doctrine, by the common law, is, that during the term at which any judicial act is done, the record thereof remains under the control of the court, and is subject to change by the judge, but after the term is past no alteration of the record is allowable. This rule is alike applicable to criminal and civil causes.

3. SAME—*power to amend or vacate an order awarding a change of venue.* The circuit court awarding a change of venue in a criminal case still has jurisdiction of the cause until the change is perfected by transfer of the original and other necessary papers in the case, and before this is done, the court, during the same term, has the rightful power to change its former order as to the county to which the cause shall be sent, or it may, if the accused so desires, vacate the order for the change of venue, and allow him to withdraw his application.

4. CHANGE OF VENUE—*reviewing proceedings had in the court awarding the change.* Where a change of venue has been awarded in a criminal cause, the court to which the cause is sent can not review the proceedings in the court awarding the change, and for mere error or irregularity therein refuse to take cognizance of the cause, when the prisoner himself makes no objection to the jurisdiction of the court.

5. SAME—*conditions to the jurisdiction of the court to which the change is awarded.* The court to which a cause is sent by a change of venue can not proceed, if the accused objects to its jurisdiction, until it has obtained possession of the cause,—that is, until the transcript of the record from the court making the order, and the original papers which the statute requires to be sent with it, shall have been lodged with the court. Until this is done the jurisdiction of the court does not appear from its own record.

6. Where, on the application of one indicted for murder, the venue was ordered to be changed to another county, but during the same term at which such award was made, and while the record and original papers remained with the court making the order, the court, on the motion of the accused, set aside such order, and directed the venue to be changed to a different county,

to which the prisoner was sent, with a transcript of the record and original papers, and the accused asked for a trial in such court, offering to waive all objection there might be to the jurisdiction of such court, it was *held*, that the latter court had jurisdiction of the cause, notwithstanding the amendment of the order as mentioned, and a *mandamus* was awarded, directing the judge of that court to proceed with the trial of the accused, under the indictment.

This was a petition in this court by the relator, for a *mandamus*, against Charles S. Zane, judge of the circuit court of Sangamon county, to require him to take cognizance of an indictment preferred by the grand jury of Macoupin county against one Lewis Biggs, in which cause the venue had been changed, and the cause sent to the circuit court of Sangamon county, and to require such judge to try the cause. The material facts are fully stated in the opinion of the court.

Mr. JAMES McCARTNEY, Attorney General, and Mr. ALEX-ANDER H. BELL, for the relator:

The propriety of proceeding by *mandamus* in this cause is approved by this court in *People* v. *Scates*, 3 Scam. 351, and *Brennan* v. *People*, 15 Ill. 512.

We maintain, paradoxical as it may seem, that while the court to which a change of venue is ordered *ad quem* acquires jurisdiction upon the making of the order, it was, nevertheless, coupled with the condition that the court granting the change should adjourn without setting aside its order.   To make its jurisdiction complete, the adjournment or non-action of the court making the order must first transpire. *Bowles* v. *State*, 5 Sneed, 360; *Logston* v. *State*, 3 Heisk. 414; 2 Meigs' Digest, 1286.

We take our position on the broad doctrine that the court has control of its own records during the term.   During the term the records are in the breast of the court, and may be by him changed, annulled or modified, as may seem proper under the circumstances.   Freeman on Judgments, chap. 4, sec. 69.

Mr. R. H. HAZLETT, and Mr. JOHN MAYO PALMER, for the respondent:

When the order was made in the case in the Macoupin circuit court changing the venue to Christian county, the jurisdiction of the first named court was divested, and the jurisdiction of the latter court at that time attached, and hence the subsequent order of the Macoupin circuit court changing the venue to Sangamon county was *coram non judice*, and void. *Billingall* v. *Duncan*, 2 Gilm. 593; *Hunter* v. *People*, 1 Scam. 454; *Wight* v. *Kirkpatrick*, 4 id. 339; *Goodhue* v. *People*, 94 Ill. 47; *Frazier* v. *Fortenberry*, 4 Ark. 162; *Stringer* v. *Jacoby*, 9 id. 498; *Henderson* v. *Henderson*, 55 Mo. 543; *State* v. *Hopper*, 71 id. 427; *Farr* v. *Fuller*, 12 Iowa, 83; *Green* v. *State*, 19 Ark. 178; *Stone* v. *Robinson*, 4 Eng. 474.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

At the January term, 1883, of this court, leave was given to file a petition, in the name of the People of the State, for a *mandamus*, to require the Hon. Charles S. Zane, judge of the circuit court of Sangamon county, to take jurisdiction of the case of the People against Lewis Biggs, being an indictment for murder, and to proceed to try the cause so soon as the same could be done with justice to the parties concerned. Accordingly such a petition was filed, in which were set forth all the facts on which the judgment of the court is invoked.

No question is made as to the jurisdiction of this court to afford the relief prayed for in the petition. Respondent, by his answer, asks the court to "take cognizance of the cause, and hear and determine the same, and render such judgment therein as to the court may seem meet and proper, and in accordance with law." But had the jurisdiction of this court in the premises been challenged, its jurisdiction in such cases is manifest from its previous decisions. *The People* v. *Scates*, 3 Scam. 351; *Brennan* v. *The People*, 15 Ill. 511.

Concerning the facts of the case there is no disagreement, as they all appear in the pleadings, by the admission of respondent. At the February term, 1882, of the Macoupin circuit court, Lewis Biggs was indicted by the grand jury of that county for the crime of murder. At the September term of that court next after the indictment was found, the accused presented his petition for a change of venue in the cause, on the ground the inhabitants of the county were prejudiced against him, and asked that the venue of the cause be changed to some county where the same prejudice did not exist. The prayer of the petition was granted, and an order entered to change the venue to the county of Christian, and the usual other orders in aid thereof were made. Afterwards, and while the prisoner still remained in the custody of the sheriff of Macoupin county, and the records and all original papers in the cause still remained in that court, on the application of the accused, made at the same term of court at which the order just recited was entered, the circuit court of Macoupin county set aside its former order entered to change the venue of the cause to the county of Christian, and by an order entered of record at the same term of court, changed the venue of the cause to the county of Sangamon, and made the usual further orders as to sending the prisoner, and the records and papers in the cause, to that county. The transcript of the record and the original papers in the cause were transmitted by the clerk of the Macoupin circuit court to the Sangamon county circuit court, and the sheriff, as was his duty, transferred the prisoner to the custody of the sheriff of Sangamon county. When the cause came up for trial in the county to which it had been sent, the State's attorney of that county entered a motion to remand the cause to the county of Macoupin, for the reason the circuit court of Sangamon county had no jurisdiction to try the cause. The accused being present, in proper person and by written consent waived all objections to the jurisdic-

tion of the court, and offered thereby to submit to its jurisdiction, but the court allowed the motion so far as to refuse to assume jurisdiction of the cause, and ordered the clerk to transmit the papers of the cause to the clerk of the circuit court of Macoupin county, and directed the sheriff to deliver the body of the prisoner to the sheriff of Macoupin county without delay.

On the facts, as they are admitted to be, no reason is perceived why the circuit court of Sangamon county should not have taken cognizance of the cause submitted to it, since the prisoner waived all objections to its jurisdiction, and to have caused the accused to be tried for the crime alleged against him, according to law, so soon as the same could be done with justice to the parties concerned. The statute authorized the circuit court of Macoupin county to change the venue of the case then pending before it, for certain reasons specified, on the application of the accused. Its jurisdiction in such matters is obvious, and it acted within statutory power when it made the order changing the venue on the application of the prisoner, as was done in this case. The utmost that can be claimed is, the venue was improperly changed by the court in which the indictment was found against the prisoner. But can the circuit court of the county to which the cause is sent inquire into that fact, and if, in its opinion, the proceedings changing the venue were irregular, for that reason refuse to take cognizance of the cause, if the prisoner himself makes no objection to the jurisdiction of the court? This question seems to be fully settled, both by the statute and the previous decisions of this court. Section 35 of the Venue act, Rev. Stat. 1874, declares, "all questions concerning the regularity of proceedings in obtaining changes of venue, and the right of the court to which the change is made to try the cause and execute the judgment, shall be considered as waived after trial and verdict." In the case of *The People* v. *Scates, supra,* although the point

was not definitely passed upon because it was not necessary
to the decision, it was said the court to which the cause is
sent is not a court to review and reverse the decision of the
court making the order changing the venue of a cause, and
for that reason has no authority to inquire into the regularity
of such order.   This view conforms to the obvious meaning
of the statute.   Irregularities in obtaining a change of venue,
where they exist, concern no one but the party asking it, and
if he simply fails to make objection, before going to trial, to
the jurisdiction of the court to try his cause, all irregularities
that may have intervened are, by the provisions of the stat-
ute, considered waived.   This construction of the statute
would seem to exclude the idea the court to which the cause
is sent may, of its own motion, refuse to take cognizance of
the cause.   In *Brennan* v. *The People, supra,* it was held that
even if the venue was improperly changed, the defendants
could not complain of what was done at their instance, and
that all irregularities in obtaining the change of venue might
be waived by the defence,—and that was a capital case.   In
its opinion in the *Brennan case,* the court recognized the rule
declared in *The People* v. *Scates,* that although the venue
may have been improperly changed, it was the duty of the
court to which the case was sent to assume jurisdiction to
try the cause, unless objections were made by defendant
himself.   It was there distinctly held that as the defendants
in that case made no objections in the court below to the
change of venue, they were concluded, by statute, from mak-
ing any in the Supreme Court.   In *Logston* v. *The State,* 3
Heisk. 414, it was said by the court in considering the juris-
diction of the court to which a case was sent on a change of
venue : "The indictment being presented, and no objection
made by the accused or his counsel, the court was authorized
and obliged to proceed with the trial."   There are obvious
reasons in support of the rule adopted in such cases.   Should
the court to which the cause is sent be permitted, of its own

motion, to refuse to take cognizance of the case when the prisoner himself makes no objection, it might greatly embarrass the administration of the criminal law, and lead to most unprofitable controversies between courts of equal jurisdiction.

But the decision may be placed on the broader ground that while the record and the original papers in the cause remain in the possession of the court making the order, that court, on the application of the accused, may change its previous order in respect to the venue, if done at the same term, and may change its order as to the county to which the cause should be sent, or if the accused demand it to be done, the court might vacate the order to change the venue, and allow him to withdraw his application. This proposition, as will appear in the sequel, has for its support both principle and authority. Undoubtedly the law is, it is the order of the court changing the venue that gives jurisdiction to the court to which the cause is sent. That jurisdiction in no sense or degree depends on any ministerial act of the clerk of the court making such order. But it is equally well settled that the court to which the cause is sent can not proceed, if the accused objects to its jurisdiction, until it has obtained possession of the cause,—that is, until the transcript of the record from the court making the order, and the original papers which the statute requires shall be sent with it, shall have been lodged with the court. Unless that is done the jurisdiction of the court to which the cause is directed to be sent is not so complete, by the mere entry of the order to change the venue, that it may proceed to try the cause over objections by defendant. It is for the obvious reason the jurisdiction of the court does not appear from anything on its own records. Text writers uniformly state the doctrine to be, that by the common law, at the term at which any judicial act is done the record thereof remains in the breast of the judge of the court, and is subject to change at that

term by the judge, but after the term is past no alteration of
the record is allowable. (3 Blackstone's Com. 407; Free-
man on Judgments, chap. 4, sec. 69.) Amendments and
changes in judgments and decrees are permitted at the same
term at which they are entered, on the hypothesis the record
still remains with the court, and has not passed from its
control. After the close of the term the record is complete,
and having passed from its control there remains no power
in the court or judge to make changes in it. The rule in
this respect is recognized wherever the common law prevails,
as applicable alike to criminal and civil causes, and is so
reasonable it commends itself to the common understanding.
Without power in the courts to allow amendments to its
records there would often be a failure of justice.

It would be quite difficult to assign any good reason why
this doctrine of amendments, so indispensable in many in-
stances to the attainment of justice, may not be applicable
to orders changing the venue in causes as well as to other
judicial acts, while the record and original papers remain
with and under the control of the court. The application of
the rule to the dismissals of actions is a matter of almost
daily occurrence in the courts, and its correctness has never
been called in question. Under the practice that prevails,
an order dismissing a cause may be set aside, and the cause
reinstated at the same term of court. Obviously the order
of dismissal, if suffered to become absolute by the adjourn-
ment of the court for the term, would operate to dispossess
the court of all jurisdiction over the case; but it is commonly
conceded the reinstating order, if made at the same term,
gives the court the same jurisdiction it originally had in the
premises. The reason and necessity for the application of
the rule to matters of venue is the same, and it would seem
the same principle ought to control. So long as the record
and original papers remained with the court making the
order, the accused acquiescing in its jurisdiction, that court,

on principle, would appear to have the same control over venue orders as it would have over any other record in its possession. Confessedly the court may change orders in other judicial proceedings at the term when the same are entered, and why may it not do the same thing touching orders concerning venue, at any time, until it shall have lost control of the case by adjournment, or otherwise? If any distinction exists in this respect, it should rest on some reason that can be appreciated by the common judgment, or otherwise none should be tolerated.

It will be remembered the court to which the first order entered directed the case to be sent, never, in fact, obtained possession of the cause or the custody of the accused. The record and the original papers remained with the court making the order, and it seems clear that court, on the application of the accused, might change its order as it did in respect to the venue, as it still had control of the cause, upon satisfactory reasons being shown for so doing. As has been seen, the accused could not complain of what was done on his own motion, and the court to which it was subsequently sent would have jurisdiction to try the cause according to law. A case analogous in principle with the one being considered is *Sevalius* v. *Pickel*, 30 Wis. 507.

Had the record and the original papers in the cause passed to the possession of the circuit court of Christian county, under the order changing the venue to that county, or had the court adjourned for the term, then the circuit court of Macoupin county would have lost all jurisdiction over the case, and could thereafter make no order in it. Observing this distinction, all difficulty suggested in the practical application of the rule adopted would be obviated, and there could be no conflict between courts of equal jurisdiction.

The peremptory writ of *mandamus* must be allowed, and it will be so ordered.

*Mandamus ordered.*

Mr. JUSTICE WALKER, dissenting:

I am unable to concur in the judgment awarding a writ of *mandamus* in this case. I hold that when the circuit court of Macoupin county entered the order changing the venue to Christian county, the former court lost all jurisdiction, and the latter became invested with full and complete jurisdiction; and had the latter court proceeded the next day to try the case, and judgment had been rendered, could the Macoupin circuit court, by vacating the order changing the venue before that court adjourned, have vacated that judgment and compelled a new trial, notwithstanding an acquittal? I presume no one would contend that could be done, although the term had not adjourned at which these orders were entered.

I presume no one will deny that it is the law, operating through the judge, that gives force and effect to the sentences of the court. I know of no other means through which the judicial power of the State can be exercised. That function can alone be exercised by the judge, and the change of venue must and can alone be granted by the judge or the court. If, then, it be said the venue is not changed until the clerk of the county from which the venue is sought to be taken lodges the papers in the case with the clerk of the court to which it is taken, then that is to hold it is the clerk, and not the court, that grants the change of venue. (*White* v. *The People*, 94 Ill. 604.) Or if it be held that the venue is not changed until the court granting it has adjourned, then, in practice, the entering an order for a change of venue at the beginning of a term operates as a stay of proceedings till the end of the term, and it would be error to try it before that time, although the term might continue three months or more. Did the legislature intend to create such delays, when adopting this law? Most assuredly not. Such could not have been nor was it intended.

But there is another view of the question, which, although requested, was not discussed by counsel, and that is, whether or not the order of the circuit court of Sangamon county, conceding that court was fully invested with jurisdiction to proceed with and try the case, did not, by its order remanding the case, change the venue of the case back to Macoupin county. That court was invested with full power to change the venue of this and any other case, and can any one doubt, that, having that power and jurisdiction of the subject matter and the parties, and an order is made changing the venue, the order would be binding and conclusive until the order should be vacated or reversed, however erroneous? Such an order, made without being asked, or even against the objection of both parties, would be binding and conclusive so long as it remained.in force. Of this, I believe, there can be no question. Whatever the form, it operated as and was a change of the venue of the case from Sangamon to Macoupin county.

Here there is an order, unimpeached, returning the case to Macoupin county for trial or other proceedings. Can there be the shadow of a doubt that, even if the case was, when the order was made by the Sangamon circuit court, properly in that court, the venue was changed back to Macoupin county by that order? We must look to the substance, and not the mere form, of the order. It purported, and its purpose was, to reinvest the circuit court of Macoupin county with jurisdiction, and if rightfully pending in the Sangamon circuit court its manifest and undeniable effect was to change the venue to Macoupin county. It may be there was gross error in making the order, but that can not be inquired of in this proceeding. Then how can it be that there can be the slightest pretense that the Sangamon circuit court has the shadow of legal right, jurisdiction or power to try this case with that order standing in full force? The term at which

the order was made having closed, there is no power in that
court to vacate that order, nor can we reverse it in this pro-
ceeding.   If the accused shall be tried and convicted in the
face of that order, and he were to bring the case to this court,
would it be possible to sustain the conviction, notwithstanding
the peremptory writ of *mandamus?*   For these reasons I dis-
sent to the awarding of the writ.