## Supreme Court—Special Term—County of New York.

*December*, 1886.

## PEOPLE v. SHARP.

### CHANGE OF PLACE OF TRIAL.

To entitle a defendant to a removal of a criminal action to another county, he must make out a clear and convincing case that by reason of popular passion or prejudice, he cannot have a fair trial in a county where the venue is laid.

Defendant was examined in the county in which the venue is laid, before a legislative committee of investigation of alleged bribery of certain aldermen, and it is probable that his testimony before that committee, and newspaper comment thereon, may have caused those who read the same to think that his failure to account for what he did with large sums of money and securities of great value, required further explanation than he then gave. *Held*, not sufficient to authorize a change from said county of the place of trial of an indictment against defendant for bribing said aldermen.

If defendant desires a change of place of trial of a criminal action by reason solely of newspaper denunciation, he must, especially where the place of publication of said newspapers is a large city where the choice of jurors is great and varied, show that this denunciation has had some effect, by way of popular expression, prejudicial to his rights.

A belief that certain aldermen acted corruptly does not render a juror incompetent to investigate the question as to who corrupted them.

MOTION by defendant Jacob Sharp for a removal of a criminal action to another county.

The facts appear in the opinion.

*William Fullerton*, for defendant and motion.

*Randolph B. Martine*, district attorney and,

*Delancey Nicoll*, assistant, of counsel in opposition.

BARRETT, J.—The defendant in the brief of counsel presses only the point as to the alleged prejudice growing out of newspaper publication. He thus abandons all claim of personal ill-will because of his connection with other railroad enterprises. Upon the argument counsel withdrew, the claim of hostility growing out of the strikes of railroad employees.

The question is thus reduced to this : Is the court satisfied that the defendant cannot have a fair and impartial trial in this county in consequence of newspaper criticism? There is no satisfactory evidence to substantiate the defendant's claim that he cannot. The affidavits of a director and vice-president of the Twenty-Third Street Railroad were as vague and lacking in precision with regard to facts and circumstances, as is the defendant's own affidavit.

The publications suggest no such result as the defendant professes to fear. It is true that the public journals have repeatedly and with much warmth and earnestness urged that the defendant be brought to trial and to justice.

They have also criticised his testimony given before a legislative committee, mainly, however, commenting upon his alleged failure to account for large sums of money and numerous securities. There is no pretense that any direct evidence of his guilt has been published. The two persons already convicted were not indicted for bribery at the hands of this defendant, but for having made a corrupt agreement to receive a bribe with some person or persons unknown to the grand jury. They were tried without any great difficulty in securing impartial jurors. And yet in each of these cases the press was flooded with the details of direct evidence of guilt placed before the reader incisively and even sensationally.

There would be less difficulty in obtaining a fair jury where an opinion as to the guilt or innocence of a defendant, can only be intelligently formed by carefully analyzing a great number of circumstances, placing them chronologically, grouping them in their proper relation to each other, and then weighing their probative value as a totality. This is a very different matter from stamping on the mind an actual confession or the narrative of an accomplice. There really is not in these papers a particle of substantial evidence that the publications with regard to the alleged complicity of Sharp and his associates have found that kind of lodgment which would prevent a fair, impartial consideration of whatever evidence, direct or circumstantial, which may ultimately be produced before the jury. They have, doubtless, aroused suspicions and even induced beliefs that there was bribery in connection with the grant of the Broadway Railroad purchase, but belief that a homicide was committed does not disqualify an otherwise competent juror from trying a particular accused. Nor does belief that certain aldermen acted corruptly render a juror incompetent to investigate the question as to who corrupted them.* But, further, these publications are not shown to have had any injurious effect upon the defendant's rights. They certainly have had no *material* effect. The defendant will enter the court room upon his trial with as perfect freedom from apprehended violence as the judge or jury.

Nor have they had any moral effect of an improper or prejudicial character. No public meetings have been called to express indignation against the defendant or his associates. The affidavits are also silent as to the existence of smaller groups of inflamed protestants. Nor do they show even a general though individual expression of opinion with respect

* The belief of a juror that there has been culpable negligence on the part of some one, does not render him incompetent to sit on the trial of the prisoner for manslaughter by that negligence, where he does not entertain such a present opinion of the guilt or innocence of the prisoner as would influence his verdict. People v. Buddensieck, 4 N. Y. Crim. Rep., 230, affirmed 5 N. Y. Crim. Rep., 69.

to the defendant's guilt, in a legal sense, of the crimes with which he is charged.

We have thus nothing more than the probability that those who have read the defendant's testimony and the comments upon it may have thought that the circumstances called for further explanation than he was at the time able or willing to afford. The law requires something much stronger than this. The normal condition of things is to try the accused by a jury drawn from the vicinage. Speculation, doubts and possibilities should not cause a deviation from this fundamental rule. Before it is suspended on a particular indictment the defendant must make out a clear and convincing case that by reason of popular passion or prejudice he cannot have a fair trial in the county. *People* v. *Sammis*, 3 Hun, 560; *People* v. *Vermilyea*, 7 Cow., 139; *People* v. *Bodine*, 7 Hill, 147. This was the rule before the Code, but now it should be even more rigidly applied, in view of the provision that an opinion in reference to the guilt or innocence of the accused should not disqualify an otherwise competent juror, " if he declare on oath that he believes that such opinion will not influence his verdict according to the evidence," and the court is satisfied to the same effect. Code Crim. Proc., § 376, subd. 2. The cases cited by counsel where a change was granted were exceptional and extraordinary. Each one had special features apart from newspaper comment.

Even in the latter particular there is a distinction between an attack upon individuals from personal malevolence or for the purpose of frustrating the administration of justice and denunciation in good faith solely from the highest and best motives (all of which is here conceded) of official corruption and of individuals honestly believed to have been committed therewith.

Thus, in *People* v. *Webb*, 1 Hill, 179, it appeared that out of forty jurors remaining after the allowance of excuses, about thirty had actually received newspaper articles sent to them by the defendant's procurement calculated to prejudice the mind against the prosecutor In *People* v. *Witbeck*, 1 Alb.

L. J., 195, it appeared that the entire county was honey-combed with the anti-rent sympathy which was the cause of the removal. In *People* v. *Baker*, 3 Park., 181, there had been a trial at which twelve hundred and fifty jurors had been drawn and the circumstances detailed by Mr. Justice Strong (p 193) which induced the removal were numerous, unusual and extraordinary. " The strong and all but universal senti-ment in the city as to the truth or falsity of the charge," said the learned judge, " was apparent from the statements of the jurors who appeared before me."

It may not be necessary to require the experiment of a trial before granting a removal, but it has been very rarely accorded without the preliminary effort to secure a fair and impartial jury. Especially is this desirable in a large city like New York, where the selection is so much greater and more varied than in other and small localities. It is also much easier to influence prejudicially to an accused the senti-ment of a small community than that of a great cosmopolitan metropolis. It is easier to ascertain the sentiment of a small than of a large community. The press of a great city teems with matter, more or less overlooked by large classes of read-ers, which would set a village aflame. It follows that the rule which throws upon the defendant the burden of clearly establishing by facts and circumstances that condition of the public mind which would deprive him of a fair and impartial trial is more exacting in large than in small communities, and that where the defendant relies solely upon newspaper denun-ciation in a great city like this he must show that this denun-ciation has had some effect by way of popular expression pre-judicial to his rights. The defendant has entirely failed to do this, and for aught that appears in his affidavits, he can have as fair and impartial a trial in this city as in any other part of the State. Certainly no journal has demanded any-thing else and no citizen appears to have been influenced to do anything else. The motion must therefore be denied.

NOTE.—Unless it be shown that there was abused discretion by the trial

court in refusing change of venue its decision will not be interfered with. *State* v. *Perigo*, (Iowa) 8 Crim. Law. Mag. 156.

An appellate court would not reverse a conviction in a circuit court because of the refusal of that court to grant a change of venue unless such refusal was an abuse of discretion. *Bishop* v. *State*, 62 Miss. 289 ; *State* v. *Foley* (Iowa), 21 North West. Rep. 162; *State* v. *Hale* (Iowa), 22 North West., Rep. 682; *Clampitt* v. *State*, 9 Tex. App. 27

Where a motion for a change of venue is made on the ground of prejudice against the defendant which would prevent a fair and impartial trial, the court may deny the motion until the examination of sufficient numbers of jurors has shown whether a fair and impartial jury can be obtained. *People* v. *Plummer*, 9 Cal. 298; *People* v. *Mahoney*, 18 Cal. 180; *State* v. *Gray*, (Nev.), Nov. 1885, 7 Crim. Law Mag. 84.

For a case somewhat similar to the one at bar, where a motion for a change of venue was made on the ground of alleged prejudice caused by the publication in certain newspapers of prejudicial accounts of the occurrence, and as to what affidavits will meet such a motion based on such a ground, see *Dunn* v. *People*, 109 Ill. 635.

The allegation that an impartial trial cannot be had must be clearly established in order to justify a change of venue. *People* v. *McCauley*, 1 Cal. 379; *Myers* v. *People*, 26 Ill. 173; *State* v. *Windsor*, 5 Har. (Del), 512; *McNealy* v. *State*, 17 Fla. 198; *State* v. *Lowry*, 4 Nev. 161; *Wormely* v. *Commonwealth*, 10 Gratt. 658.

Where it appears that one or more persons contributed to prosecute the defendant, a removal from the county was ordered. *People* v. *Lee*, 5 Cal. 353.

Threats by a mob and great excitement, justify a removal. *State* v. *Greer*, 22 W. Va. 800; but if the mob violence and public excitement has subsided, then it is no error to refuse the removal. *Roe* v. *State*, 10 Lea., (Tenn), 673.

A motion for a change of venue must be made at the earliest opportunity. *Haskins* v. *People*, 14 Ill. App. 198.

On a trial for rape, affidavits uncontradicted of leading citizens that there is intense excitement and strong prejudice in the county against the defendant, held sufficient to entitle him to a change of venue. *Richmond* v. *State*, 16 Neb. 388.

To justify a change of venue on account of prejudice of the inhabitants of the county it must affirmatively appear that there is such a feeling and prejudice prevailing in the community as will be reasonably certain to prevent a fair and impartial trial.

The court to which a change of venue has been made in a criminal case cannot inquire into the regularity of the order making such change, and of its own motion, without objection from the prisoner, refuse to take jurisdiction. *People* v. *Zane*, 105 Ill. 662.