[Criminal No. 348.   Filed February 28, 1914.]

[138 Pac. 1048.]

## S. R. CUTLER, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—TRIAL—ADMISSION OF PRELIMINARY EVIDENCE.—In a prosecution for rape, the prosecution asked a witness whether she had received any notes responsive to those she had sent to defendant, and over objection said that she had, that a paper shown her was such note, but the contents of the paper was excluded, such questions and answers were preliminary to the admission of the paper, and were addressed to the court and, the paper itself having been excluded, were not injurious to defendant, since the jury is concerned only with the evidence that is admitted.

2. CRIMINAL LAW—FAILURE OF ACCUSED TO CALL WITNESSES—COMMENTS—STATUTES.—Under Penal Code of 1901, section 1112, as amended by Penal Code of 1913, section 1212, providing that a defendant in a criminal action cannot be compelled to be a witness against himself, and that his failure to testify in his own behalf shall not prejudice him or be used against him on the trial, the remark of the county attorney, in a colloquy following objection to his statements as to defendant's failure to deny the offense, that "if it was not so, do you think he would not bring some witnesses here to swear to it," was not in violation of the statute, since it was not a comment upon defendant's failure to testify, but upon his failure to produce other witnesses.

3. CRIMINAL LAW—TRIAL—ARGUMENT.—Such statute was not intended to prohibit the prosecutor from arguing that the jury should return a verdict in accordance with the testimony of the state, where it was uncontradicted; that being a legitimate argument.

4. CRIMINAL LAW—WEIGHT OF EVIDENCE—UNIMPEACHED WITNESS.—In the absence of explanation, reasonable statements of unimpeached witnesses are presumed to be true, where not contradicted.

5. CRIMINAL LAW—APPEAL—HARMLESS ERROR—ALLUSION TO DEFENDANT'S FAILURE TO TESTIFY.—A mere allusion by the county attorney

to the fact that defendant had failed to testify in his own behalf was not sufficient to work prejudice to defendant and cause a reversal of a conviction.

6. RAPE—INDICTMENT — ELEMENTS OF OFFENSE.—An information for rape upon a female under 17 years of age must charge that the prosecutrix was not the wife of the accused at the date of the alleged offense, which allegation must be supported by proof to the satisfaction of the jury beyond a reasonable doubt before a conviction can be sustained.

[As to indictment for rape, see note in 80 Am. Dec. 361.]

7. RAPE—EVIDENCE—CIRCUMSTANTIAL EVIDENCE.—Upon a trial for rape upon a female under the age of 17 years, the fact that the prosecutrix at the date of the alleged offense was not the wife of the accused may be established by circumstantial evidence, as any other material fact in the case may be established.

8. RAPE—SUFFICIENCY OF EVIDENCE—RELATION OF PARTIES.—In a prosecution for assault upon a female under the age of 17 years, circumstantial evidence *held* to show that prosecutrix was not the wife of accused at the time of the offense.

[As to circumstantial evidence, see notes in 62 Am. Dec. 179; 97 Am. St. Rep. 771.]

APPEAL from a judgment of the Superior Court of the County of Maricopa. J. C. Phillips, Judge. Affirmed.

### STATEMENT OF FACTS BY THE COURT.

The appellant was charged with the commission of the crime of rape upon one Valera Mills, a female child under the age of seventeen years, and was convicted. He appeals from the judgment of conviction, from an order refusing a new trial, and from an order denying his motion in arrest of judgment. The prosecutrix's mother testified that her daughter Valera was born June 21, 1896. The prosecuting witness made her home with her mother at Nineteenth avenue south, in Phoenix. The mother's name is Alice Yerrick. The father of Valera is dead, and the mother has married again. On the evening of May 16, 1913, the prosecuting witness, Valera Mills, in company with Grace Wilkinson, met this defendant at a little candy store. The defendant talked to both girls for a time. Drinks of soda water were served, and they talked on general subjects. After they got through drinking, the two girls and defendant started to East Lake Park. At Washington street

they saw Mr. Canning, the probation officer, and ran.   Then
defendant conducted the girls to his (defendant's) room.
When they arrived at the room Bob Berry was there.   The
defendant got three bottles of beer and some sandwiches.
After disposing of the beer and sandwiches, which took
about an hour, Valera and defendant went into another
room, and the door was shut between the two rooms.
While in the room with the door shut the defendant had
sexual intercourse with the witness Valera twice.   At one time
while the defendant was having intercourse with Valera, Grace
Wilkinson entered the room.   When these acts were accom-
plished, the defendant and Valera returned to the other room,
where they had left Grace Wilkinson and Bob Berry.   The
proprietor of the rooming-house objected to the presence of
the girls in the house, and demanded accused to get them out.
Thereupon defendant conducted the two girls to a room in
another part of the city.   The girls undressed and went to
bed at the last-mentioned room.   Later defendant came, and
he was admitted, and he undressed and occupied the same bed
with the two girls, when the defendant again had sexual inter-
course with Valera Mills.

The cross-examination of Valera Mills brought forth the
facts: That the witness had resided in Phoenix with her
mother, Alice Yerrick, for four years.   That during that
period she had been confined at the Crittendon Home for
fallen women for three days, through the instrumentality of
Mr. Canning, the probation officer.   That since the date of
the alleged offense, and before the trial, the witness had seen
and talked to Mr. Canning two or three times, but he had not
discussed the facts of the case with witness.   He had told
witness at one of these times that she was going to the reform
school.   That witness first told Mr. Adams what took place
between herself and the accused.   In the course of the cross-
examination this witness was repeatedly addressed as "Miss
Mills."   In the course of the cross-examination of the witness
Grace Wilkinson, the counsel for the accused invariably re-
ferred to the prosecutrix as "Miss Mills."   Other facts are
sufficiently stated in the opinion.

The appellant assigns the following as grounds for reversal
of the judgment:

(1) "The court erred in permitting the witness . . . Grace Wilkinson to testify on direct examination, over defendant's objection, that she received notes from defendant in response to those written by her to him."

(2) "The court erred in permitting . . . Grace Wilkinson to testify on direct examination, over defendant's objection, that a certain paper note was sent to her by defendant."

(3) "The court erred in not instructing the jury to disregard certain remarks of the county attorney at the close of his argument to the jury, which remarks were prejudicial to appellant."

(4) "The court erred in overruling defendant's motion for a new trial on the grounds that there was a fatal variance between the information and the evidence."

Mr. Benton Dick, for Appellant.

Mr. G. P. Bullard, Attorney General, and Mr. Leslie C. Hardy, Assistant Attorney General, for Appellee.

CUNNINGHAM, J.—The first and second assignments of error are without merit. The prosecution asked the witness Grace Wilkinson the question, "Did you receive any notes which were responsive to and referring to the notes which you sent to this defendant?" Defendant objected, and the objection was overruled, and the witness answered, "I did." The witness was shown a paper and asked to state whether or not "that is responsive to any note sent by you to the defendant.." To this defendant objected, the objection was overruled, and the witness answered, "Yes, sir." The contents of the note or paper were then offered, an objection interposed, and the evidence rejected by the court. The questions and answers were preliminary to and bearing upon the admissibility of the evidence about to be offered, and addressed to the court. The jury is not concerned with the question of the admissibility of the evidence offered. The appellant has received no injury when, as here, the questions and answers bearing upon the admissibility of an item of evidence is received by the court for the information of the court, when the court rules with the party objecting, and excludes the evidence concerning the admissibility of which the questions

were asked and the answers given. The jury is concerned only with the evidence that is admitted by the court for their consideration and not with the rules of law entitling the evidence to be admitted.

The accused did not go upon the witness-stand, nor offer any witnesses in his behalf.

The county attorney in his closing address to the jury stated, "That neither of the two men who took these girls to the room has denied it." An immediate objection was made to this statement, and the court promptly instructed the jury as follows: "The fact that the defendant does not testify in the case should not be taken against him. It is improper for an attorney to comment on that. The fact that he does not do that shall never be taken as evidence against him." The county attorney, addressing the jury, denied that his remarks implied a comment upon the fact that the defendant did not testify as a witness. The defendant's counsel complained that the county attorney's last remark to the jury was in effect the repetition of the former objectionable comment, with which the court agreed. The county attorney then stated, "I have no right to comment that no one went on the witness-stand; no one was put on the witness-stand to deny a single sentence these girls testified to before you." Defendant objected to the statement "that no witness has taken the stand to deny what these girls said," for the reason it means that the defendant did not take the stand. To this objection the county attorney replied, "Do you think if it was not so he would not bring some witnesses here to swear to it?" To which statement and argument the defendant promptly objected, and the court ordered the exceptions entered. This proceeding of the county attorney is made the basis for the third assignment of error.

Paragraph 1112, Revised Statutes of Arizona of 1901, as amended by section 1212 of the Penal Code of 1913, reads as follows: "A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself, but may be a witness in his own behalf. . . . His neglect or refusal to be a witness in his own behalf cannot in any manner prejudice him, nor be used against him on the trial or proceedings."

It is clear that the county attorney in making the first statement that provoked an objection from the defendant,

viz., "That neither of the two men who took these girls to the room has denied it," had reference to the defendant and Bob Berry. After the court instructed the jury that the fact that the defendant does not testify in the case should not be taken against him, and the court warned the attorney in the presence of the jury that it is improper for him to comment on the fact that the accused had not testified, the county attorney speaking to the jury denied that he had made any statements that could be considered a comment upon the failure or neglect of this defendant to testify in his own behalf. With this statement and explanation of the meaning which the former statement was intended to carry, the county attorney wished the jury to understand his former statement; that statement was directly limited by the county attorney to the failure of the defendant to offer any witnesses (evidently referring to Bob Berry, his roommate) to deny the fact that defendant and Berry took the girls to the room. The counsel for defendant so understood the explanatory statement of the county attorney. The statement in explanation was immediately charged as "practically the same thing" repeated, and the objection was made that "he [the county attorney] has no right to comment on the other man." The court agreed to this proposition by answering "Yes" as his ruling. The county attorney was seemingly provoked by the objection and the ruling of the court, and in a spirit of surprise and inquiry said: "I have no right to comment that no one went on the witness-stand; no one was put on the witness-stand to deny a single sentence these girls testified to before you." To the words "that no witness has taken the stand to deny what these girls said," the defendant objected for the reason the statement indirectly means that the defendant did not take the stand. To this objection the county attorney asked this question, "Do you think if it was not so he would not bring some witnesses here to swear to it?" This was the subject for a further objection, and a request that a record be made preserving the exceptions, which was ordered.

The assignment of error is thus stated: "The court erred in not instructing the jury to disregard certain remarks of the county attorney, at the close of his argument to the jury, which remarks were prejudicial to appellant." We are re-

ferred to page 32 of the reporter's transcript, and the remarks there made, to which an objection was made, are these: "If it, was not so, do you think he would not bring some witnesses here to swear to it?" The question is, then: Was this statement, the using of the fact that defendant had neglected or refused to be a witness in his own behalf, to his prejudice in violation of the statute? We think not. It was not a comment upon the neglect or refusal of the defendant to testify; it was a comment upon the omission of defendant to produce the witness Bob Berry or other witnesses about the rooming-house to deny the statements made by the witnesses for the state to the effect that the defendant and his companion took the girls to defendant's room. A comment upon the failure of the accused to prove or disprove facts which he might do by other witnesses is not a comment upon the neglect or failure of the defendant to testify in his own behalf, and such comment is a proper argument, when the evidence shows the existence of other witnesses than the defendant· to the fact under discussion, as is here shown. *State* v. *Griswold,* 73 Conn. 95, 46 Atl. 829; *Frazier* v. *State,* 135 Ind. 38, 34 N. E. 817; *State* v. *Seely,* 92 Iowa, 488, 61 N. W. 184; *State* v. *Johnston,* 88 N. C. 623; *Wilkerson* v. *State* (Tex. Cr.), 57 S. W. 956; *People* v. *McGrath,* 5 Utah, 525, 17 Pac. 116; *Halleck* v. *State,* 65 Wis. 147, 26 N. W. 572.

The statute was not intended to prohibit the prosecutor from arguing that the jury should return a verdict in accordance with the testimony of the state because it was uncontradicted. If the contention of the appellant were sustained, such argument, which is perfectly legitimate, would be cut off. *Frazier* v. *State,* 135 Ind. 38, 34 N. E. 817; *Wilkerson* v. *State* (Tex. Cr.), 57 S. W. 956, 961.

In the absence of explanation, reasonable statements of unimpeached witnesses are presumed to be true when uncontradicted. *People* v. *McGrath,* 5 Utah, 525, 17 Pac. 116.

The bare allusion to the failure of defendant to testify has been held by the Texas court of criminal appeals as not sufficient error upon which to reverse the case. See *Green* v. *State* (Tex. Cr.), 31 S. W. 386; *Parker* v. *State,* 39 Tex. Cr. 262, 45 S. W. 812; *Mathews* v. *State,* 41 Tex. Cr. 98, 51 S. W. 915; *Bruce* v. *State* (Tex. Cr.), 53 S. W. 867; *Wilkerson* v. *State* (Tex. Cr.), 57 S. W. 956. The most that can be said

in favor of the appellant concerning these statements of the county attorney is that he merely alluded to the fact that the defendant had neglected to testify in his own behalf, and we think, if the statements were so made and so considered, they are not sufficient to work prejudice to appellant and cause a reversal of the judgment.

Appellant complains that a fatal variance between the information and the proof exists in the particular that the information charges that the prosecuting witness, Valera Mills, was not the wife of the defendant, and no direct proof of that fact was offered. The assignment is no doubt intended to reach the question of a failure of evidence to support a material allegation of the information, and not a question of variance of proof. We will treat it as a proper assignment presenting the question of a failure of evidence to support the material allegation.

We held in *Lenord* v. *State, ante,* p. 137, 137 Pac. 412, that the information must charge that the prosecutrix was not the wife of the accused at the date of the alleged offense, and that such allegation must be supported by proof to the satisfaction of the jury beyond a reasonable doubt before a conviction can be sustained. We also held in the same case that, upon a trial for rape alleged to have been committed upon a female under the age of seventeen years, the fact that the prosecutrix at the date of the alleged offense was not the wife of the accused may be established by circumstantial evidence, as any other material fact in the case may be established. We adhere to these rulings.

The question here is whether there is substantial evidence in this record from which the jury was justified in drawing the inference that Valera Mills was not the wife of the accused on May 16, 1913, the date of the alleged offense. To correctly answer this question it becomes necessary to review the testimony bearing upon that question. The evidence, fairly considered, establishes the facts: That on May 16, 1913, Valera Mills and Grace Wilkinson were together at a little candy store on one of the streets of Phoenix. That there the accused joined them and entered into a conversation with them. He treated them to refreshments, and thereafter the three started for a pleasure trip to East Lake Park. On reaching the place where they expected to board a car, they

met Mr. Canning, the probation officer. The girls knew him. Grace Wilkinson had recently escaped from the Crittendon Home for fallen women, and Valera Mills admitted she had been an inmate of that home at one time for a period of three days, put there by the probation officer, Mr. Canning. When they saw the probation officer, they abandoned their trip to the park, and through the fear of the probation officer they left the car line and went on to less prominent streets and to the room of the accused with the accused. When they reached the room, they found there another man, Bob Berry, who was a friend to the accused and lived at the same house. The accused absented himself from the room and returned with beer and sandwiches. After disposing of the lunch thus provided, the accused and prosecutrix retired to an adjoining room, when the alleged criminal act was accomplished. During the time the accused and the prosecutrix were in the separate room, the door was closed between that room and the other room, where Grace Wilkinson and Bob Berry were left and where they remained. While the girls were at the house, a son of the owner of the house, at the request of the owner, his mother, requested the accused to get the girls out of the house, and the accused promised to, and did later in the evening, get them out as requested. The witness never saw the girls at the house but the one time. When the girls left the house, they were conducted by the accused to another room which he provided for them. When the girls reached the latter room they undressed and went to bed. Later the accused arrived, and he also undressed and retired to the same bed. The two girls and the accused occupied the same bed the remainder of that night.

Upon the cross-examination of the prosecutrix by the defendant she was repeatedly addressed as ''Miss Mills,'' and, upon the cross-examination of Grace Wilkinson, Valera Mills was referred to by counsel as ''Miss Mills.'' The prosecutrix stated in answer to what she was doing in the Crittendon Home that Mr. Canning, the probation officer, put her there, and that she stayed there three days. She had previously admitted that she had avoided Mr. Canning while in the company of the accused. She admitted that she had seen Mr. Canning three times since the acts up to the date of the trial, but denied that she had discussed the case with him, and de-

nied that he had asked her about the facts of the case; but
when pressed on cross-examination she admitted that Mr.
Canning had said nothing, "only he said I was going to the
reform school." The witness admitted that she had first told
Mr. Adams about what took place between herself and Cutler,
the accused, on the day before the preliminary examination,
and at the time she told him two or three other people were
in the room. Can these facts be true, and yet the fact re-
main that Valera Mills was on May 16. 1913, the wife of the
accused? Are the facts that a girl under seventeen years of
age, residing with her mother for the past four years, con-
tinuously, except for three days while she was confined at the
home for fallen women, having been placed there by the pro-
bation officer, and abandoned a pleasure trip to a park in the
evening in the company of the man and a girl friend, but
instead of going to the park she went to the man's room; that
she had never been to that room before nor since; that while
there the man had been requested to and did take her and her
girl companion away from the house in which he had a room,
for the reason their presence was objectionable, to another
room in another part of the city, and there the man occupied
the same bed with this girl and her girl companion the re-
mainder of the night; that because of her associations with
this man the probation officer had informed the girl that she
would be placed in the reform school; and that she had told
Mr. Adams, in the presence of two or three other men, about
what took place between herself and the man at his room on
the sixteenth day of May—we repeat, can these circumstances
be true and yet this girl at the same time be the wife of the
man in question? We think not. These circumstances are
inconsistent with the existence of the fact that the prosecutrix
was the wife of the accused. The case was tried by the coun-
sel and the court upon the theory that the prosecutrix was
not the wife of the accused. The accused accepted that theory
until the state rested its case in chief, as is evidenced by the
searching cross-examination of the state's principal witnesses.

The prosecutrix was addressed, while under cross-examina-
tion by the counsel for the accused, as "Miss Mills." She
was asked questions for the purpose of discrediting the wit-
ness by showing that she had been an inmate of a home or
institution for fallen women; she was grilled upon the fur-

nace of cross-examination to bring forth her admission that
she had reported to the law officers the acts charged, and had
been drilled by someone as to her statements at the trial. In
the course of the examination of other witnesses the prosecu-
trix was repeatedly referred to by counsel for accused as
"Miss Mills." No question was raised by any of the actors
in the trial, during the whole course of the trial, that the
facts and circumstances produced in evidence were produced
upon any different theory than the theory that the prosecu-
trix was not the wife of accused. The allegation in the infor-
mation that the prosecutrix was not the wife of the accused
was of equal importance with the allegation that the girl was,
at the time of the commission of the criminal act, under the
age of seventeen years, and with the allegation that the act
complained of was committed in Maricopa county, Arizona,
and with the allegation that the act was accomplished. The fact
that the girl was under seventeen years of age was testified
to by the mother of the girl, and was not disputed by other
evidence nor by cross-examination. No dispute arose over
the question of venue. No questions were asked any of the
witnesses upon cross-examination seeking to discredit the tes-
timony of the witnesses that the act alleged as criminal was
accomplished at the rooms of the accused, other than bringing
out the facts that the prosecutrix and her friend, Grace Wil-
kinson, had been inmates of the Crittendon Home for fallen
women, and they were under the surveillance of the probation
officer; and that their testimony was in some measure colored
by reason of reports to the officers and conversations with
them or with someone for the purpose of showing motive for
the prosecution.

Not one incident of the trial appears in the record that
hints at any different or other theory of the case than was
adopted by the prosecution and the court. It is absurd to
say that a jury should be expected to adopt any other theory
of the case than adopted by the state, the accused, and the
court. The fact that the prosecutrix was not the wife of
the accused never became a disputed fact in the course of the
trial. The circumstances surrounding the commission of the
act could not be reconciled with the act upon any other rea-
sonable hypothesis than that of the guilt of the defendant;

XV Ariz.—23

that is, than the fact that the girl was under seventeen years of age, that the accused had sexual intercourse with her at his room at Phoenix, in Maricopa county, Arizona, and that she was not his wife at the time of the commission of the act. The jury were justified in finding the existence of these facts from the uncontroverted evidence before them. When the state rested, the defense offered no evidence. He relied for an acquittal upon the failure of the state's evidence to convince the jury of his guilt, which was his right; or he had no evidence to offer contradicting the state's evidence. The prosecution had within its power to ask the direct question whether the prosecutrix was the wife of the accused, but did not do so. We do not approve of the careless manner of introducing evidence tending to establish essential facts as this record exhibits was followed in this case. We do not attribute our cause for criticism to intentional or willful carelessness, but to the zeal of the law officers and their desire to expedite the business of a crowded court docket, resulting in taking for granted well known local conditions and facts. More care to detail would avoid such questions arising as are presented in this case.

If the evidence in this record was such as to leave any doubt of the guilt of the accused in our minds upon a consideration of the whole evidence of the case, we would not hesitate to set aside the conviction. We do not hesitate, upon the other hand, to hold upon a full consideration of the entire evidence that substantial justice has been done.

No reversible error appears in the record. The judgment is affirmed.

FRANKLIN, C. J., concurs.

ROSS, J.—I concur in the conclusions reached in this case.