560 P.2d 925

**STATE of New Mexico,
Plaintiff-Appellee,**

*v.*

**Reggie David BELL,
Defendant-Appellant.**

No. 10868.

Supreme Court of New Mexico.

March 1, 1977.

Anthony E. Lucero, Jr., Albuquerque, for defendant-appellant.

Toney Anaya, Atty. Gen., Louis Valencia, Anthony Tupler, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

OPINION

EASLEY, Justice.

Defendant was convicted by a jury in the District Court of Bernalillo County of kidnapping in the first degree, criminal sexual penetration in the first degree, and aggravated battery. He was sentenced to two concurrent terms for life. He appeals.

On October 14, 1975, the defendant allegedly followed the victim, a seventeen-year-old female student at the University of New Mexico, through Albuquerque traffic to a fraternity house parking lot, where he assaulted and struck her and forced her onto the floor of his car and drove away.

The victim testified that she lost consciousness about this time, and that the next thing she remembers is waking in the emergency room of the Bernalillo County Medical Center some hours later.

Other than positive identification of the defendant as her assailant, she was able to offer little direct testimony in reference to the sexual assault. However, the evidence showed that she had been severely beaten about the face, that an eight-ounce rock and several handfuls of sand and pebbles had been packed into her vagina, and that 13,500 Sigma units of acid phosphatase, indicating recent sexual intercourse, were present in her vagina.

The victim testified that she had sexual intercourse with her boyfriend the evening preceding the incident, after which she showered and changed clothes. Rebuttal testimony established that only a few hundred units of acid phosphatase could reasonably be anticipated to be the remnants of that sexual encounter.

Nine points of error are raised by defendant:

1. Defendant claims that the trial court erred in instructing the jury that criminal sexual penetration is defined as "penetration . . . with any object" when the grand jury indictment did not so charge. This claim of error is completely without foundation. No such instruction was given. In fact, one submitted by the State containing the language objected to was refused by the court.

2. Defendant contends that it was error for the trial court to refuse to direct a verdict in his favor, claiming that the evidence was insufficient to support a conviction of first-degree criminal sexual penetration because the only evidence of sexual intercourse was circumstantial.

The traditional distinction between direct and circumstantial evidence, upon which defendant here relies, has been specifically disapproved by N.M.U.J.I.Crim. 40.00 and 40.01 [2d Repl.Vol. 6, N.M.S.A.1953 (Supp. 1975), at 316, 317], which were in effect at the time of defendant's trial. These instructions and use notes require that "no instruction . . . shall be given" either on the distinction between the two types of evidence or upon the test for the sufficiency of circumstantial evidence. The committee commentary reveals that the committee believed that defining the types of evidence had little practical value for the jury, and that nothing is added by instructing the jury on the sufficiency of circumstantial evidence once the court determines that the State has met the legal test for sufficiency of the evidence—which remains proof beyond a reasonable doubt.

By implication, of course, the only tests remaining, either for purposes of instructions or for raising error on appeal, are those of sufficiency of the evidence to support the charge and, on appeal, the substantiality of the evidence to support the verdict. Viewing the record as a whole, we think there is substantial evidence to warrant the case going to the jury, and the trial court did not err in denying defendant's motion. *State v. Ferguson,* 77 N.M. 441, 423 P.2d 872 (1967); *State v. Martin,* 53 N.M. 413, 209 P.2d 525 (1949); *State v.*

*Wilkerson,* 83 N.M. 770, 497 P.2d 981 (Ct. App.1972).

3. Reversible error is claimed because the court denied a defense motion for a directed verdict. Defendant claimed that, because there was no medical testimony establishing permanent damage to the victim and no medical testimony that her injuries created a high probability of death, there was insufficient evidence to support a conviction for kidnapping in the first degree.

In order to support a conviction for kidnapping in the first degree, the evidence must prove, inter alia, that the defendant inflicted "great bodily harm" upon the victim. Section 40A–4–1(B), N.M.S.A.1953. Section 40A–1–13(A), N.M.S.A.1953 defines "great bodily harm" for purposes of the Criminal Code to be "injury to the person which creates a high probability of death; *or* which causes serious disfigurement; *or* which results in permanent *or* protracted loss or impairment of the function of any member or organ of the body." (Emphasis added.)

The disjunctive nature of the conditions of the statutory definition are obvious. The conditions are not cumulative; only one need be shown in order to establish "great bodily harm."

The medical testimony established that the victim was "at least temporarily seriously disfigured" and, before treatment, was in danger of permanent impairment of the function of the left eye. The plastic surgeon who examined and treated the victim following the incident testified that she had, in addition to multiple facial lacerations, hemorrhage in both eyes, paralysis of facial nerves, and a cheek bone so shattered that her left eye had dropped into her sinus. Elaborate plastic surgery was required to replace the eye and rebuild the bone. The bone was so fragmented that a plastic plate had to be inserted to hold the injured eye in place. This satisfied the statutory definition of great bodily harm, which does not require that the disfigurement be permanent.

Furthermore, the law does not require that "great bodily harm" be proved exclusively by medical testimony. The jury is entitled to rely upon rational inferences deducible from the evidence. *State v. La Boon*, 67 N.M. 466, 357 P.2d 54 (1960). The general description of the patient's appearance and condition upon arrival at the Bernalillo County Medical Center and other non-medical testimony, especially the photographs of the victim admitted into evidence, constitute substantial evidence justifying the denial of defendant's motion for a directed verdict. *State v. Ferguson, State v. Martin, State v. Wilkerson,* supra.

■■ 4. Defendant claims that the prior statement given to the police by the victim and received in evidence was inadmissible because offered for no other purpose than to corroborate her oral testimony.

The record reflects that the prior consistent statement of the victim was admissible under the exception to the hearsay rule provided in New Mexico Rule of Evidence 801(d) [§ 20–4–801(d)(1)(B), N.M.S.A.1953 (Supp.1975)].

That rule declares that a "statement is not hearsay if . . . [t]he declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is . . . consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."

Defendant on cross-examination declared that the victim had been "coached" in her oral testimony and implied that she was testifying from memory of the written statement. The statement was properly admitted to rebut this implicit charge of improper influence.

The admission or exclusion of evidence is a decision within the sound discretion of the trial court, whose judgment will be set aside only upon a showing of abuse of discretion. *United States v. Miller*, 460 F.2d 582 (10th Cir. 1972); *United States v. Wainwright*, 413 F.2d 796 (10th Cir. 1969), cert. denied, 396 U.S. 1009, 90 S.Ct. 566, 24 L.Ed.2d 501 (1970); *State v. Marquez*, 87 N.M. 57, 529 P.2d 283 (Ct.App.1974), cert. denied, 87 N.M. 47, 529 P.2d 273 (1974). The court did not abuse its discretion here.

■ 5. The trial court's exclusion of the testimony of a defense witness on the results of the defendant's polygraph examination is claimed as error.

The offered testimony would have shown that defendant registered a score of positive-three on the polygraph test. A score of positive-six was considered by the expert to be conclusively truthful, while a score of negative-seven was considered conclusively untruthful. A fair interpretation of the evidence shows nothing more than that a score of positive-three is inconclusive. Defendant employs the ingenious argument that because the test results were "inconclusive on the positive side," i. e., tending toward truthfulness, they were somehow probative evidence of truthfulness and that exclusion of this evidence was reversible error.

Defendant's expert would only say, "It's inconclusive. You've just got to have more positive indications of truthfulness, deception, to say." On cross-examination, the state asked the witness: "So you cannot say, as a basis or result of the test that you gave, that Mr. Bell was deceptive or that he was not deceptive?" Witness answered: "No I can't." There was no error in excluding the evidence.

Defendant claims that the offered evidence satisfied the requirements for admissibility of polygraph examinations set forth in *State v. Dorsey*, 88 N.M. 184, 539 P.2d 204 (1975). These requirements are: (1) evidence of the qualifications of the operator, (2) testimony to establish the reliability of the testing procedure, and (3) the validity of the tests made on the subject.

It is true that the minimum standards thus set forth were satisfied by the polygraph test, since the State stipulated to the first two requirements and no objection was made to the third; but this is no way makes the evidence automatically subject to admission. There is always the question of relevance.

Admitting that all three of the requirements of Dorsey were met, the results of this test were inadmissible because they were irrelevant. They did not prove that defendant's truthfulness was more likely or less likely. See N.M.R.Evid. 401 [§ 20–4–401, N.M.S.A.1953 (Supp.1975)]. The results proved nothing and were properly excluded. N.M.R.Evid. 402 [§ 20–4–402, N.M.S.A.1953 (Supp.1975)].

6. The defendant challenges the admission of certain photographs of the victim, claiming that any probative value was outweighed by the danger of inflaming the passions of the jury, and that the photographs were unnecessarily cumulative of the other testimony.

The questions to be answered regarding admissibility of photographs of the victim in a criminal case are (1) whether the photographs are calculated to arouse the prejudices and passions of the jury and (2) whether they are reasonably relevant to the issues of the case. *State v. Upton,* 60 N.M. 205, 290 P.2d 440 (1955).

"Great bodily harm" was one element of the crimes charged which had to be proven by the State beyond a reasonable doubt. The extent and nature of the victim's wounds were material issues, to which the photographs were clearly relevant. *State v. Victorian,* 84 N.M. 491, 505 P.2d 436 (1973); *State v. Upton,* supra.

Admissibility being discretionary with the trial court, the case will be reversed on appeal only upon a showing of abuse of that discretion. *State v. Gardner,* 85 N.M. 104, 509 P.2d 871 (1973), cert. denied, 414 U.S. 851, 94 S.Ct. 145, 38 L.Ed.2d 100 (1973); *State v. Armstrong,* 61 N.M. 258, 298 P.2d 941 (1956).

Defendant has the burden of proof of abuse of that discretion. *State v. Victorian,* supra. No abuse is found.

7. A State's rebuttal witness was permitted to answer a certain hypothetical question relative to acid phosphatase testing and defendant claims error because the question was allegedly based on erroneous factors and the doctor's answer allegedly failed to take into account "all necessary and relevant factors."

Defense counsel offered testimony suggesting that it was impossible to determine from the evidence whether the acid phosphatase was residue from intercourse with the victim's boyfriend the night before the assault or residue from the defendant's criminal sexual penetration.

After the defense rested its case, the State introduced rebuttal testimony to the effect that the high level of acid phosphatase found "could not have come from intercourse the date previous to the sample."

A hypothetical question was propounded to the expert, directed toward an answer that the acid phosphatase found was the result of intercourse on the questioned day. Defense counsel objected, claiming that (1) the witness did not know what reagent was used in the test, (2) there was no evidence to support the witness' opinion as to the method of obtaining the count of acid phosphatase and (3) there was no testimony upon which the witness could base his opinion as to other possible contributing factors to the acid phosphatase count. However, the witness was permitted to answer.

Defendant argues that this "flaw" in the testimony invalidated the testimony and, moreover, amounts to reversible error under the rule of *Landers v. Atchison, Topeka & Santa Fe Railway Co.,* 68 N.M. 130, 359 P.2d 522 (1961). That case is distinguishable because the witness there based his opinion on an assumption which was later in the trial shown not to be true; and because it was shown that the false assumption was critical to the entire nature of the proof in the case. In *Landers* the hypothetical question and answer were properly found to be erroneously admitted.

Defendant offered no proof that the reagent used was not the proper one. Thus error was not substantiated. A careful analysis of the record in regard to this issue is persuasive that defendant's objection goes to the weight of the evidence rather than its admissibility. *Ruhe v. Abren,* 1 N.M. 247 (1857). The question was proper and the answer admissible.

8. Defendant next raises as fundamental error the failure of the trial court to instruct the jury that it must find that the victim was not defendant's spouse. Defendant did not object to this failure at trial nor did he submit a proper instruction. The issue is raised for the first time in this court.

The issue is of first impression here. The resolution of the question warrants very serious consideration because of the consequences of serving two life sentences by this defendant and because two other first-degree criminal sexual penetration cases are also pending before us.

■ The statute defines criminal sexual penetration to be the "unlawful . . . causing of a person, other than one's spouse, to engage in sexual intercourse . . . ." It is asserted that a finding by the jury that the victim was not defendant's spouse is essential to a conviction. Failure to instruct on an essential element of the crime charged is reversible error. *State v. Gunzelman,* 85 N.M. 295, 512 P.2d 55 (1973); *State v. Jones,* 85 N.M. 426, 512 P.2d 1262 (Ct.App.1973); *State v. Walsh,* 81 N.M. 65, 463 P.2d 41 (Ct.App.1969).

If proving that the victim was other than defendant's spouse is an essential element, the issue is properly in this court. If it is not, the defendant waived his rights by not perfecting his record, and cannot complain.

There are several critical facts operative under these peculiar circumstances that militate against a holding that the omission of the words "other than one's spouse" from the instruction on the elements of the crime requires reversal.

■ There was abundant, albeit circumstantial, evidence that the victim was not defendant's wife. The most cogent of this evidence is the victim's sworn statements that she had never seen defendant before he assaulted her and defendant's testimony that he had never seen the victim before she appeared in court. The last names of defendant and victim were different. Defendant did not raise "marital relationship" as a defense. He does not now claim to be married to the victim.

In short, it cannot be reasonably maintained that there was any doubt on this question. It simply was not factually at issue in this case.

The applicable rule of criminal procedure [§ 41–23–41, N.M.S.A.1953 (Supp.1975), hereinafter Rule 41] requires in subsection (a) that "[t]he court must instruct the jury upon all questions of law essential for a conviction of the crime or crimes submitted to the jury."

■ The "questions of law essential to a conviction" of rape, which was the common law precursor of the statutory offense of criminal sexual penetration, traditionally have been three: (a) carnal knowledge or intercourse, (b) force, and (c) commission of the act without the consent or against the will of the victim. 65 Am.Jur.2d Rape § 2 at 762 (1972); 75 C.J.S. Rape § 8 at 471 (1952); Black's Law Dictionary 1427 (4th rev. ed.).

It is clear that the jury must be properly instructed on the law relative to each of these three essential elements of the crime. It is not disputed by the defendant that the jury in this case *was* properly instructed in this regard.

■ The question of whether the victim was one "other than his spouse" is not to be considered in the same sense as the elements of carnal knowledge, force, and lack of consent; rather, it bears as an evidentiary matter upon the third element of lack of consent, since a wife is irrebuttably presumed to consent to sexual relations with her husband, even if forcible and without consent. A husband is legally incapable of raping his wife. See *Duggins v. State,* 76 Okla.Cr. 168, 135 P.2d 347 (1943); *Frazier v. State,* 48 Tex.Cr.R. 142, 86 S.W. 754 (1905). Defendant does not contend that there was any evidence—and there was none—from which the jury could have inferred that the victim was defendant's wife.

The basic weakness in defendant's argument is the assumption—unsupported by case law or statute or commentary of any

kind—that the definitional component of "other than one's spouse" is an essential element of criminal sexual penetration. This court has recently addressed the knotty semantic problem of the significance of designating certain components of a crime to be "elements." See *State v. Smith*, N.M., 558 P.2d 46 (1976), where this court declared that it was irrelevant whether provocation was termed an "element" of manslaughter so long as there was sufficient evidence of provocation in the record.

The prior statute covering the crime of rape, § 40A–9–2, N.M.S.A.1953, since repealed, specified that the crime consisted of a *"male* causing a *female* other than his *wife"* (emphasis added) to engage in sexual intercourse. No one has ever been in this court, or any other appellate court of which we are aware, contending that it was fundamental error for the court not specifically to instruct the jury that it must find that the defendant was a "male" and that the victim was a "female." Why would it not also be necessary under the reasoning of defendant that the court instruct the jury that it must find the Bernalillo County is really a county, that New Mexico is a state and that this is actually New Mexico?

In *Sharp v. State,* 188 Ind. 276, 123 N.E. 161 (1919) the Indiana Supreme Court considered a similar issue and stated, 188 Ind. at 279, 123 N.E. at 162:

> The rule which requires the state to prove the guilt of the defendant beyond a reasonable doubt applies only to the essential facts constituting the crime charged; but the rule does not apply to the proof of subsidiary facts which are not essential elements of the crime, but which, if shown to exist, have a tendency to prove or disprove one or more of the constituent elements of the crime.

There is authority for the proposition that when the statute creating the offense includes an exception, the prosecution need not negate the exception by either alleging or proving that the defendant does not come within it; rather, it is then for the defendant to prove that he comes within it as a matter of defense. *Jalbert v. State,*

200 Ind. 380, 165 N.E. 522 (1928) (holding, in a prosecution for interstate transportation of alcohol, that the state was not required to allege in indictment or sustain by evidence that the liquor was being transported for illegal purposes), which spawned the following cases: *Day v. State,* 251 Ind. 399, 241 N.E.2d 357 (1968) (not incumbent on state to allege or prove that possession of firearm was unauthorized); *Cartwright v. State,* 154 Ind.App. 328, 289 N.E.2d 763 (1972) (same re possession of narcotics); *Butler v. State,* 154 Ind.App. 361, 289 N.E.2d 772 (1972) (not incumbent on state in prosecution for unlawful possession of narcotics to prove all possible exceptions or, by affirmative evidence to negate every conceivable hypothesis by which defendant may have gained possession lawfully.)

The *Jalbert* rule was approved in *People v. Fowler,* 32 Cal.App.2d Supp. 737, 84 P.2d 326 (1938), where the California court admitted that possession of a chiropractor's license would afford a complete defense to the charged violation of the Medical Practice Act but declared that it did not follow that the complaint must negative defendant's possession of such a license. The California authority for so holding in *Fowler,* supra, is not dependent upon the Indiana rule but can be traced back as far as 1898, where the Supreme Court of California decided in *People v. Boo Doo Hong,* 122 Cal. 606, 55 P. 402 (1898) that, in a prosecution for illegally practicing medicine, the burden is on the accused to show that he had a license to practice as required by law, since it is a matter peculiarly within his own knowledge.

Consistent with both *Fowler,* supra, and *Boo Doo Hong,* supra, is *People v. Tilkin,* 34 Cal.App.2d Supp. 743, 90 P.2d 148 (1939), which held that the prosecution did not need to prove that the accused did not fall within an exception of the anti-picketing statute upon which the prosecution was founded, but that such proof fell to defendant as a matter of defense.

*People v. Gelardi,* 77 Cal.App.2d 467, 175 P.2d 855 (1946), likewise held that it was a matter of defense for the accused pharma-

cist to prove, if he could, that he sold the narcotic with a written prescription, but that the State was not required to negative the statutory exception relating to sales of narcotics made pursuant to a physician's written prescription. The court in *Gelardi, supra,* declared that if the accused person sells a narcotic "unlawfully," it follows that he does not hold a prescription for it. The analogy is clear: if a person causes another to have "unlawful" sexual intercourse, it follows that the person so caused is "other than the spouse of" the accused.

All of these cases espouse the principle that the rules of criminal pleading do not require the indictment to set forth the evidence or negate every possible theory of defense. See *Stokes v. United States,* 157 U.S. 187, 15 S.Ct. 617, 39 L.Ed. 667 (1895); 4 Wharton's Criminal Procedure, Indictment and Information § 264 (1957). Jury instructions are obviously analogous in form and intent to indictments: in fact, because the evidence must conform to the terms of the indictment as the instructions must conform to the evidence, the relationship between the sufficiency of the indictment and of the instruction is more than metaphoric. It is both direct and actual. Therefore, given this direct relationship between indictment and instruction, it shows that it was not incumbent on the State to prove that the victim was not the wife of the defendant in this case since the statutory definition of the crime creates by negative exclusion the exculpatory status of husband.

Even without this authority for the general proposition that it is not incumbent upon the prosecution in a criminal case to prove a negative status created by statutory exclusion, there is authority for the specific proposition that it is not incumbent upon the prosecution in a rape trial to allege or prove that the prosecutrix was not the wife of the accused.

At common law, it was never necessary to allege that the prosecutrix was not the wife of the accused, and whether or not such an averment is essential under the statute has been a point of conflict among jurisdictions. *Sharp v. State,* supra, 188 Ind. at 278, 123 N.E. at 161, 162 held that:

It may be shown as a defense that the woman against whom the offense is alleged to have been committed is the wife of the person who is charged with committing the rape, but it is not necessary to negative this fact in the indictment. *Curtis v. State* (1909), 89 Ark. 394, 117 S.W. 521; *State v. Morrison* (1912), 46 Mont. 84, 125 P. 649; *State v. Williamson* (1900), 22 Utah 248, 62 P. 1022, 83 Am.St. 780; *State v. White* (1890), 44 Kan. 514, 25 P. 33.

Cases cited in *Sharp* for the opposite view are clearly distinguishable because they deal with statutory rape in which consent is not an element, which very materially affects the quality of the proof required for conviction.

In *Cutler v. State,* 15 Ariz. 343, 138 P. 1048 (1914) the facts in a statutory rape case were very similar to ours and the court held there was no error (15 Ariz. at 353, 138 P. at 1052):

. . . It is absurd to say that a jury should be expected to adopt any other theory of the case than adopted by the state, the accused, and the court. The fact that the prosecutrix was not the wife of the accused never became a disputed fact in the course of the trial. . . .

The radical extension of the doctrine of *strictissimi juris* in favor of criminal defendants by higher courts of this country has led to some absurd results. To reverse this case under the circumstances pertaining here for the reason that the trial court omitted the words "other than his wife" from its instructions would be one of the more ludicrous results possible from the application of the doctrine.

It would be a perversion of justice, a classic demonstration of profoundly inequitable results that follow when the judiciary worships form and ignores substance.

Defendant's claim cleverly distorts and seeks to take advantage of an important policy of this court, that of recognizing the grave significance of proper jury instruc-

tions, especially in a first-degree case, and of entertaining arguments in this regard on appeal even when error was not preserved at trial. Holding the claimed error to be "fundamental" would be making a mockery of the jurisdictional-error rule, the reasons for its creation, and the judiciary that administers it.

Since the matter of "other than one's spouse" was, then, not one of the "questions of law essential for a conviction" upon which the court is required to instruct the jury, but rather a subsidiary fact, subsection (d) of Rule 41 comes into play. That paragraph provides in pertinent part that "[e]xcept as provided in paragraph (a) of this rule, for the preservation of error in the charge, objection to any instruction given must be sufficient to alert the mind of the court to the claimed vice therein, or, in case of failure to instruct on any issue, a correct written instruction must be tendered before the jury is instructed . . ."

Defense counsel did not raise objection to the allegedly fatal omission at trial and did not tender a proper instruction. Instead, defendant claims jurisdictional-error and that the issue may be raised for the first time on appeal. *State v. Gunzelman, State v. Walsh,* supra. We hold that the jurisdictional error rule, under the rubric of Rule 41(a), does not apply. Rather, Rule 41(d) requires that the error be preserved. This was not done and defendant cannot raise the issue here.

9. Defendant's final contention is that the judge erred in refusing to grant defendant's requested change of counsel. The extent of his complaint was that he felt his attorney did not believe him and that he did not want to represent him. This claim of error is manifestly without merit. *State v. Walker,* 202 Kan. 475, 477–478, 449 P.2d 515, 518 (1969) states:

. . . An indigent defendant may not compel the court to appoint such counsel as defendant may choose. Such appointment lies within the sound discretion of the trial court . . . Likewise, whether the dissatisfaction of an indigent

accused with his court-appointed counsel warrants discharge of that counsel and appointment of new counsel is for the trial court, in its discretion, to decide . . .

This rule was adopted in New Mexico by *State v. Salazar,* 81 N.M. 512, 469 P.2d 157 (Ct.App.1970), where the court emphasized that substitution of court-appointed counsel is within the discretion of the trial court.

There is no tenable showing of abuse of discretion here; no claim of inadequate representation or prejudice to the defense is made; it was clearly not error to deny defendant's request.

The decision of the district court is affirmed.

IT IS SO ORDERED.

McMANUS and SOSA, JJ., concur.