# THE STATE OF NEVADA, RESPONDENT, v. JOSEPH T. LAWRY, APPELLANT.

TIME OF DRAWING AND IMPANNELING GRAND JURY. Under Sections of the Statute concerning Juries, (Statute of 1866, 191) a Grand Jury may be selected and impanneled after the commencement of a term, whenever one is wanted.

INDICTMENT SURPLUSAGE. In an indictment for assault with a deadly weapon with intent to inflict upon the person of another a bodily injury, which is in other respects good, the mere addition of the words "did strike and stab" are simply surplusage and do not vitiate.

CONTINUANCE BY COURT ON ITS OWN MOTION. The trial of a criminal case having been fixed for the last day but one of a term at defendant's instance, he then applied for a continuance, which was refused; and the court proceeded to impannel a jury which, however not being completed until near noon the next day, the court then, deeming the remainder of the day too short a time for the trial, discharged before it was sworn and continued the term: Held, no error.

DISCHARGE OF JURY NOT SWORN. The discharge of a jury impanneled in a criminal case after they have been sworn in it might operate as a bar to a subsequent prosecution; but not so when they have not been charged with the case.

SHOWING FOR CHANGE OF VENUE. The mere facts that a criminal charge has been pending a long time and been generally talked about and discussed throughout the county, and that a number of rich and influential persons in the county have interested themselves in procuring a conviction, do not sufficiently show that a fair and impartial trial cannot be had; and the refusal of a change of venue under such circumstances is not error.

IMPORT OF VERDICT OF "GUILTY." In a prosecution for an assault with a deadly weapon with intent to inflict upon the person of another a bodily injury, properly charged, a verdict of "guilty" is in effect, (Criminal Practice Act, Sec.  ) a verdict of guilty as charged in the indictment.

EVIDENCE OF PROVOCATION. In a prosecution for assault with a deadly weapon with intent to inflict upon the person of another a bodily injury, acts occurring a day or two prior to the assault and known to defendant cannot of themselves alone be shown as evidence of a provocation for the assault.

PROVOCATION, WHAT. In cases where a provocation either mitigates or justifies an act of violence, such act must be the immediate result of and closely follow the provocation.

PROVOCATION AS QUESTION OF FACT OR LAW. As a general rule, the determination as to what length of time may intervene between an act of provocation and the commission of a crime should be left to the jury, when the provocation is not so far distant as to leave no doubt.

EXERCISE OF LEGAL RIGHT NOT A PROVOCATION. The simple exercise of a legal right, no matter how offensive to another, is never in law deemed a provocation sufficient to justify or mitigate an act of violence.

FINE FOR ASSAULT WITH DEADLY WEAPON. Under the statute relating to the crime of assault with a deadly weapon with intent to inflict upon the person of another a bodily injury, (Statute of 1861, 64, Sec. 47) a court has no authority to impose a fine of any sum less than one thousand dollars, though the sentence may also be for imprisonment.

FINES FIXED BY STATUTE CANNOT BE REDUCED. If a criminal statute provides that a fine shall not be less than a certain sum nor exceeding a certain larger sum, a court has no more right to impose a less fine than the smaller amount than it has to impose any greater fine than the larger amount.

PRACTICE—UNAUTHORIZED FINE. Where the court below in a criminal case imposed a less fine than that fixed by statute, it was on appeal stricken out from the sentence.

APPEAL from the District Court of the Second Judicial District, Douglas County.

At the August term, 1867, of the District Court at which the indictment below referred to was found, the following order was entered on the minutes under date of August 5th:

" In the matter of drawing a Grand Jury : It appearing to my satisfaction that a Grand Jury is necessary for the August term of this Court, and that none have been summoned, it is ordered that a Grand Jury be selected and announced as is provided in section six (6) of the Act entitled "An Act concerning Juries," approved March 3d, 1866 ; and it is further ordered that said jurors be summoned to appear before this Court on Monday, August 19th, at 10 o'clock A.M. of that day."

On the day fixed, at the impannelment of the Grand Jury, the defendant, Joseph T. Lawry, a prisoner in the custody of the Sheriff, held to answer before the Grand Jury, being present in Court, interposed through his counsel a challenge to the panel, on the ground that said panel had not been selected and summoned as provided by law. The challenge, after argument, was disallowed, the defendant excepting.

The indictment afterwards found by the Grand Jury accused the defendant of the crime of an assault with a deadly weapon with intent to inflict upon the person of Abner S. Murphy, without provocation, a bodily injury, charging that he, on May 5th, 1867, in Douglas County, " with a deadly weapon, to wit : a dirk knife, which said dirk knife, being a deadly weapon as aforesaid, he, the

said Joseph T. Lawry, in his right hand then and there had and held, willfully, unlawfully, maliciously, feloniously, and without provocation, one Abner S. Murphy, then and there being, did assault, strike and stab, with the intent to willfully, unlawfully, maliciously, feloniously, and without provocation, to inflict upon the person of him, the said Abner S. Murphy, a bodily injury, contrary," etc.

To this indictment defendant demurred, on the grounds that it did not substantially conform to the requirements of Sections 234 and 235 of the Criminal Practice Act in form, and that the acts stated as constituting the offense charged showed that another and different offense had been committed than that charged, to wit: the offense of stabbing, cutting or wounding with intent to murder. The demurrer, after argument, was overruled, defendant excepting.

Defendant then pleaded not guilty, and the cause was, at his instance, continued for the term.

At the next or November term, the trial having been fixed for a certain day, defendant, who had been released from custody on bail, failed to appear, and his bail was forfeited; but afterwards, having made his appearance and offered a satisfactory excuse for his absence, the order forfeiting bail was rescinded, and the time of trial, at the instance of defendant, was fixed for Friday, November 29th, 1867, the last day of the term but one.   On the day last named, defendant applied for a continuance for the term, on the ground of the absence of material witnesses, setting forth in his affidavit what he expected to prove by them.   This affidavit the Court decided to be a sufficient showing for a continuance ; but on the District Attorney's proposition that everything sworn in the affidavit which would be competent as evidence on the trial should be admitted, the trial was ordered to proceed, defendant excepting.

Thereupon the Court proceeded to impannel a trial jury, which, however, was not completed until near noon the next day, when the Court, deeming it impossible to try the cause before the term would expire, ordered the jury, which had not been sworn, to be discharged, and the cause continued for the term, defendant excepting.

At the next or February term, 1868, defendant moved for a change of venue, on the ground that he could not have a fair and

impartial trial in the county, for the reasons that the charges against him had been pending a long time; had been discussed throughout the county, and there was scarcely any one but had formed or expressed an unqualified opinion as to his guilt or innocence; that great influence had been brought to bear against him; that amongst others, several of the richest and most influential persons in the county were interested in his conviction, and had put forth every energy to secure it; and that in consequence thereof he was afraid, and believed he was in danger of being tried by some persons fully prepared to convict him without either law or evidence.

The motion for change of venue having been denied, and also a, further motion for a continuance, the trial proceeded, and resulted in the following verdict: "We, the jury, find the defendant guilty, and recommend him to the mercy of the Court."

The sentence of the Court was, that defendant should pay a fine of five hundred dollars, and be imprisoned in the State Prison for the period of one year.

*Thomas E. Haydon* and *S. C. Denson*, for Appellant.

1. The grand jury should have been drawn ten days before Court instead of the first day of term. (Statutes of 1866, 191–2, Secs. 1 and 6.)

2. The demurrer should have been sustained. The indictment shows a stabbing and wounding *committed*, and the assault merged in the act; and the indictment is not in statutory form, nor sufficient under the common law. (Wheaton Am. Crim. Law, 1276, note H, to 1279.)

3. The Court erred in discharging the jury at the November term. (Wheaton, 575, Constitution, Art. 1, Secs. 3 and 8.)

4. The Court should have changed the venue. (Stat. 1861, 467, Secs. 306 and 307; *People* v. *Collector*, 15 Cal. 353; 17 Cal. 146.)

5. The Court should have allowed the testimony in relation to provocation. (*People* v. *Arnold*, 15 Cal. 481; *People* v. *Williams*, 17 Cal. 146; *People* v. *Belencia*, 21 Cal. 546; *People* v. *Barry*, 30 Cal. 351.)

6. The verdict only finds defendant guilty of simple assault, and

judgment should have been given accordingly. (*People* v. *Vanard*, 6 Cal. 562; *People* v. *Wilson*, 9 Cal. 260; *People* v. *English*, 30 Cal. 217; *People* v. *Nugent*, 4 Cal. — ; *People* v. *Kennedy*, 5 Cal. 134.)

7. The Court had no jurisdiction to render judgment for $500. (Stat. 1861, 64, Sec. 47.) The judgment being void in part, is void *in toto*.

*Robert M. Clarke*, Attorney General, for Respondent.

By the Court, LEWIS, J.

The defendant was indicted, tried, and convicted for an assault with a deadly weapon, under Section 47 of the Act " concerning crimes and punishments," (Laws of 1861, page 64) which provides that " An assault with a deadly weapon, instrument or other thing, with an intent to inflict upon the person of another a bodily injury, where no considerable provocation appears, or where the circumstances of the assault show an abandoned and malignant heart, shall subject the offender to imprisonment in the Territorial prison not less than one year nor exceeding two years, or to a fine not less than one thousand dollars nor exceeding five thousand dollars, or to both such fine and imprisonment."

Many errors are assigned by the defendant upon which a reversal of the judgment is claimed, the first of which is, that the grand jury which found the indictment was not drawn ten days before the term at which it was found, as required by Section 7 of the " Act concerning Jurors." (Laws of 1866, page 192.) But Section 8 of the same Act authorizes the selection and impannelment of a grand jury after the commencement of the term; hence, this objection is not well taken. (*State* v. *McNamara*, 3 Nev. 70.)

It is also argued that the Court erred in overruling the demurrer to the indictment. We think the Court ruled very properly. It is impossible to understand why the charge of striking and stabbing should vitiate an indictment in other respects good. The assault is properly charged, but counsel seem to labor under the impression that the further charge that the defendant did " strike and stab" possesses the peculiar power of vitiating an indictment otherwise

sufficient. But those words are simply surplusage, and therefore do not vitiate what is good. The assault without the striking or stabbing would have completed the offense, but as every battery includes an assault we apprehend the indictment in this case would have been sufficient if it did not charge the assault, but only the striking and stabbing. However, the charge of a battery cannot vitiate the indictment.

The third assignment is, that the Court erred in discharging the jury who were impanneled on the 30th of November, and continuing the trial for that term. The counsel had on the day before moved for a continuance of the cause, but the motion being overruled by the Court the cause proceeded, but a jury was not obtained until about eleven o'clock A. M. of the 30th, which was the last day of the term. The jury were not charged with, or sworn in the case when they were discharged, and hence, if there were any good reason for it, the Court had the right to discharge them and continue the cause. The reason for this action of the Court doubtless was a belief that the trial could not be finished before the expiration of the term. But if there were no good reason for it, we do not see how at this time any such action of the Court can aid the defendant. It is not claimed that the jury who subsequently tried him was not a fair and impartial one, and the discharge of a jury before they are charged with the cause is certainly no defense to a subsequent prosecution. Had they been sworn to try the cause it is probable their discharge by the Court would have operated as a bar to any subsequent trial. Not so, however, where they are not charged with the case. (See State v. Kelley, 1 Nev. 224.)

As to the ruling upon the motion for a change of venue, the Court was clearly correct. The affidavit did not sufficiently show that a fair and impartial trial could not be had in the County of Douglas. The showing of prejudice is certainly not as strong as that made out in the case of the State v. Millain, (3 Nev. 409) in which a change of venue was refused. It is also claimed that the verdict finds the defendant guilty only of a simple assault, and hence that the judgment of imprisonment was not authorized. In support of this proposition it is argued that the jury should have stated in

their verdict that they found the defendant guilty, " as charged in the indictment." But a general verdict of guilty is in effect such a finding. Such was the old rule, and the statute of this State expressly declares that, " a general verdict upon a plea of not guilty, is either ' guilty,' or ' not guilty,' which imports a conviction or acquittal on every material allegation in the indictment."

Upon the trial, the defendant offered to prove that a day or two prior to the time of the assault he was in the actual occupation of certain land in the County of Douglas, and had taken steps to secure a title thereto from the Government of the United States ; that the prosecuting witness had forcibly ejected him and taken possession of it, and threatened to kill him if he went upon it, and that these threats were communicated to him prior to the assault, and after satisfying himself by inquiry at the Land office that Murphy, the prosecuting witness, had taken steps to pre-empt the land in question, he sought and found him, and demanded of him to abandon his proceedings in the Land office. ·

All the evidence offered by the defendant, with respect to the possession of the land and the proceeding to pre-empt by Murphy, was ruled out, and this is assigned as error : counsel for the prisoner arguing that it should have been admitted, because tending to establish a provocation sufficient under the statute to constitute defense.

We are of the opinion, however, that the Court below ruled correctly in excluding it. It appears from the record that the acts which the defendant sought to rely on as a provocation for the assault made upon Murphy occurred, and were known to him, a day or two prior to the assault. It would seem, therefore, that the at-tack resulted rather from a spirit of revenge or vengeance, than from an immediate and instantaneous impulse to resent an injury. Whilst the law in some measure excuses the rash, instinctive impulse of retaliation or defense, which sometimes impels man to action before his reason has an opportunity to interpose, it shows no indulgence to that spirit of vengeance or revenge which *commits* crime upon deliberate reflection.

In this case, it is evident the assault was not the result of that sudden passion aroused by an injury, but of a deliberate desire for

revenge. It would be almost dangerous and pernicious to hold that at any length of time after some real or imaginary injury a man may assault another with a deadly weapon, and then shield himself from the penalties of this statute by proving such injury. If an injury and provocation which occurred two days prior to the assault may be relied on, why may not a provocation which occurred two months prior? Indeed, we can see no reason why a provocation once given would not, if the argument of counsel for the prisoner be correct, be a license for an endless number of assaults with a deadly weapon.

The language of the statute is peculiar, and might bear the construction placed upon it by counsel; but it is the general rule, in cases where a provocation either mitigates or justifies an act of violence, that such act must be the immediate result of, and closely follow the provocation, and such would seem to be the safest and most rational construction to be placed on the statute under consideration. Thus, an insult or a blow given one day, would in no wise justify or mitigate an assault on the day following. And although a blow might reduce an instant killing from murder to manslaughter, it would constitute no defense whatever to a killing, after the lapse of a sufficient time for deliberation. So in this case, had the assault taken place in so short a time after the injury complained of came to the knowledge of the defendant as to make it probable that it was committed under the immediate influence of the passion aroused by such injuries, proof of the injury would be competent; but after the lapse of a day or two, the assault can only have been the result of a deliberate and cool determination. It is clear that, had the wounds received by Murphy proved fatal, and the defendant been indicted for murder, the evidence ruled out by the Court would not in that case be admissible to reduce the grade of the offense, because it would not tend to establish such provocation as the law recognizes as sufficient to constitute any excuse whatever for a homicide. If not admissible in such a case to prove provocation and to reduce the grade of the crime, why should it be in a case of this kind, where it is relied on as a defense?

It is a well settled rule that evidence of provocation is admissible in mitigation of damages in actions for assault and battery.

But all the courts hold that it is only immediate provocation which is available for that purpose. Thus, in the case of *Avery* v. *Ray et als.*, (1 Miss. 12) there was an offer to prove in mitigation of damages that the plaintiff had slandered the defendant's sister ; that when the defendant heard of it he called on the plaintiff to ascertain whether such were the case, but failing to obtain any satisfactory answer, the defendant chastised the plaintiff, and the action was brought to recover damages for the assault and battery. The Court ruled out all the evidence of provocation, holding that immediate provocations are admitted in evidence in mitigation of damages, but that when time for reflection has intervened so as to give the blood time to cool, they are inadmissible. So also it was held in *Fullerton* v. *Warrick*, (3 Blackford, 219) the Court using this language in the opinion : " The law, in tenderness to human frailties, distinguishes between an act done deliberately and an act proceeding from a sudden heat. As if upon a sudden quarrel two persons fight and the one kills the other, this has been adjudged only manslaughter. So if a man be greatly provoked, as by pulling his nose, or other great indignity, and immediately kills the aggressor, though this is not excusable, the offence is mitigated homicide. But in every case of homicide upon provocation, if there be any time intervening between the assault and the killing, sufficient for passion to subside and reason to interpose, the offense becomes murder. In analogy to this principle, evidence in civil actions for assault and battery is admitted in mitigation of damages to show a provocation on the part of the person complaining of the injury. But the provocation must be so recent as to induce a fair presumption that the violence done was committed during the continuance of the feelings and passions excited by it, before the blood has had time to cool. A different rule would greatly encourage breaches of the peace, rencounters and brutal force."

See also *Lee* v. *Woolsey*, 19 John. 318 ; *Thrall* v. *Knapp*, 17 Iowa, 470 ; *Rochester* v. *Anderson*, 1 Bibb, 428.. This being the rule in civil cases when damage is claimed for an assault and battery, we see no reason why the same rule should not hold good in cases of this character. The simple question in both character of cases is, whether there is a fair presumption that the violence was

12

committed under the immediate influence of the passion aroused by the provocation, or by a feeling of revenge. It is true that it is often a difficult matter to determine what length of time must intervene between the provocation and the commission of the crime, and hence, as a general rule, it is well to leave the determination of that fact to the jury, when the provocation is not so far distant as to leave no doubt.

We cannot, however, sanction the doctrine that a person who assaults another with a deadly weapon may prove some insult or injury which occurred two days before, in mitigation of his offense. Such holding would be giving judicial sanction to the worst feelings of human nature. Nor is the lapse of time the only circumstance rendering the evidence in question inadmissible in the case. The defendant, by his own testimony, shows clearly that he was not at the time of the assault acting under the influence of any uncontrollable passion, for he deliberately called Murphy to some distance from where he was sitting, conversed with him for some time, saying nothing about the possession of the land, and it was only upon the refusal of Murphy to comply with this demand that the assault was made. "My intention," said the defendant, in conclusion of his testimony, "in seeking an interview with Murphy at Sheridan, was to make him abandon his proceedings in the Land office." And this doubtless explains the cause for the assault. But the proceedings to pre-empt by the prosecuting witness were the exercise of a right which the law gave him, and therefore cannot be considered a provocation in any legal sense of the word. The simple exercise of a legal right, no matter how offensive to another, is never in law deemed a provocation sufficient to justify or mitigate an act of violence; hence, as it is perfectly apparent from the defendant's own testimony that the taking possession of the land by Murphy was not the cause of the assault, any evidence respecting that fact was irrelevant; and as the proceedings to pre-empt would not, if established, constitute any legal provocation or defense, all evidence with respect to them was properly ruled out. This disposes of all the questions raised upon the rejection of the evidence respecting the possession of the land, and thus any special consideration of them is rendered unnecessary. We agree

with counsel for the prisoner, however, that the Court below had no authority to impose a fine of five hundred dollars, which it did in addition to the imprisonment. The statute is explicit that the fine shall not be less than one thousand dollars. In such case the Court has no more right to impose a-less fine than that required by statute, than it has to impose one greater. The law, however, authorizes fine and imprisonment, or either; hence the judgment, so far as it subjects the defendant to imprisonment, is correct, and must be affirmed, whilst so much of it as imposes a fine is stricken out.