UNITED STATES of America, Appellee,

v.

Larry LOMBARDI, Defendant-Appellant.

No. 665, Docket 76-1471.

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1977.

Decided March 1, 1977.

Thomas E. Engel, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Audrey Strauss, Asst. U. S. Atty., New York City, on the brief), for appellee.

Jonathan J. Silbermann, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for defendant-appellant.

Before LUMBARD, FEINBERG and MULLIGAN, Circuit Judges.

PER CURIAM:

A jury in the United States District Court for the Southern District of New York found Larry Lombardi guilty of six counts of possession of heroin with intent to distribute, and one count of conspiracy. He appeals that conviction on the basis of various trial errors. For the reasons set forth below, we reject his arguments and affirm the judgment of conviction.

The evidence at trial showed that Lombardi was part of a smuggling enterprise that brought large amounts of heroin into the United States from the Far East. Lombardi acted as a distributor, and obtained merchandise in large quantities from Yuin Kwei Sang (Yuin). The Government's case relied heavily on the testimony of Yuin, who pleaded guilty to a single count and cooperated with the prosecution.

■ Lombardi challenges the admission into evidence of portions of Yuin's testimony at the earlier trial of two other members of the smuggling ring, Cheung Kin Ping (Cheung) and Lai Mong Wah (Lai). In his direct examination in this trial, Yuin testified that Lombardi's nephew, Americo Spagnuolo, had been involved in several of the narcotics transactions with Lombardi. On cross-examination, defense counsel elicited a concession that Yuin had not included Spagnuolo in any previous testimony. Seeking to rebut this inferential attack on Yuin's credibility, the Government on redirect questioned Yuin about his prior testimony both before the grand jury and at the trial of Cheung and Lai. The Assistant United States Attorney read to Yuin portions of his prior testimony that were consistent with his essential testimony against Lombardi, although they made no mention of Spagnuolo. Lombardi contends that the court should not have permitted the use of Yuin's prior testimony in that way, because it had nothing to do with the discrepancy raised on cross-examination. However, cross-examination had called into question Yuin's credibility by suggesting Yuin had recently altered his story to inculpate Lombardi. The Government was thus entitled under F.R.Evid. 801(d)(1)(B)[1] to show that what Yuin did say at the former trial was consistent with his direct testimony at Lombardi's trial. Lombardi argues that the prior consistent testimony cannot be corroborative because Yuin had the same motive to lie at the earlier trial, namely, the hope of leniency. But defense counsel himself said at this trial that Yuin "wants to get a

---

1. F.R.Evid. 801(d)(1)(B) allows the admission of prior testimony of a witness if the statement is "consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive."

conviction here so that he can get the best possible deal he can get." The suggestion clearly was that Yuin's immediate object was to get Lombardi convicted, a motive that was not present at the first trial. Lombardi was not even apprehended until after the completion of the first trial. Therefore, the prior testimony was properly admitted.

■ Lombardi also claims that the district court erred in instructing the jury that Lombardi's modest life style "would hardly suggest" that he could afford to buy large amounts of heroin for himself, thus allowing the jury to infer that Lombardi possessed the heroin with intent to distribute it.[2] But Judge Brieant's statement fell well within the permissible range of the trial judge's discretion to comment upon the evidence. Cf. *United States v. Natale*, 526 F.2d 1160, 1166–68 (2d Cir. 1975), cert. denied, 425 U.S. 950 (1976); *United States v. Tourine*, 428 F.2d 865, 869–70 (2d Cir. 1970), cert. denied, 400 U.S. 1020, 91 S.Ct. 581, 27 L.Ed.2d 631 (1971). And in any case, defense counsel had conceded to the court that "40 pounds would be kind of tough to use personally, I think , regardless of where you lived," indicating the absence of any real issue as to the intent to distribute.

■ Finally, Lombardi urges us to remand this case for inquiry into the propriety of the handling of a diary Yuin kept from November 1974 to July 1975. During the trial of Cheung and Lai, the prosecutor learned of the existence of the diary, and notified the court. But later the prosecutor returned the diary to Yuin, apparently so that Yuin could select the portions as to which he wished to assert a privilege. Defense counsel in that case objected that Yuin had been given an opportunity to alter the diary, but the panel in *United States v. Cheung*, Slip op. 2063 (2d Cir. Feb. 28, 1977), refused to reverse on that ground.[3] We agree with the *Cheung* panel that the possession and control of the diary could have been handled better, but we too conclude that the claim based on the incident is too speculative. Yuin only began to keep the diary after he was arrested, so there is little likelihood that it contained useful material for the defense. Indeed, counsel in the prior trial did not make any substantive use of the diary. Moreover, when Yuin took the stand at Lombardi's trial, defense counsel hardly bothered to question him about the diary.

Judgment affirmed.

---

**2.** Judge Brieant instructed the jury as follows:

"There is no direct evidence that Lombardi actually distributed any narcotics. There is, however, some circumstantial evidence in the case bearing on his intent which the jury may consider in determining whether the drug was possessed with intent to distribute.

In that regard, the record appears to show that Lombardi lived modestly in an old tenement house on East Broadway, that he had a store in which items of small value were sold and that his life style would hardly suggest that his could pay such large amounts of money for heroin unless he was intending to resell it.

There is no indication that he himself was a user of heroin, and your common sense will tell you that users of heroin ordinarily do not buy such large quantities of almost pure heroin as was testified to by the witness Yuin in this case, so that in view of the situation of the defendant as appears in the evidence and the large quantity and high purity of the alleged heroin, you may, but you need not, infer from those circumstances alone that the purpose of acquiring the heroin, if he did so, was to possess it with intent to distribute it to others.

However, that's a factual question and it is a question for your sole determination because you decide all issues of fact in the case."

**3.** The opinion in that case contains a full presentation of the facts regarding the diary and its use in the first trial.