580 P.2d 126

**Juan Garza RODRIQUEZ, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

**No. 11699.**

Supreme Court of New Mexico.

June 6, 1978.

Ken Cullen, Albuquerque, for petitioner.

Toney Anaya, Atty. Gen., Santa Fe, for respondent.

## OPINION

SOSA, Justice.

On September 17, 1976, Tommy Dean Jones gave George Hanks a ride over to the house belonging to the defendant Juan Rodriquez. Not knowing the owner of the house, Jones remained in the car waiting for Hanks. After about fifteen minutes had elapsed, Jones got out of the vehicle and approached the house.

Once Jones was close enough to hear voices coming from within the house he heard someone, whom he could not identify, discuss needing a "fix." Jones then left the house and went to a phone booth where he called the Hobbs police department. Pursuant to this phone call an officer met Jones. Jones explained to the officer that he had a friend in the house in which a "fix" was being discussed. The officer after speaking with Jones decided to call his supervisor.

The supervisor then assembled six officers around the defendant's house. Four of the officers stationed themselves between the defendant's parked vehicle and his house. Three of the officers testified that they could only see silhouettes on the window shades but that they heard a "click" from a rifle. All were in the immediate vicinity of the defendant's open window. The fourth officer testified that he saw the defendant holding a rifle when he peered into the defendant's home from right outside the window. Meanwhile, the other two officers, upon entering the private property of the defendant, heard something coming from within the residence that sounded like the bolt of the rifle being opened and closed. One of the officers then proceeded to the front door, knocked and announced himself. Upon knocking on the door, the officers heard feet shuffle and the toilet flush. Defendant opened the door pursuant to the officer's request.

Once the door was opened, the two officers at the door observed from the threshold narcotics "paraphernalia" on the coffee table behind the defendant. When they observed the defendant start to clean up the table, they entered the home. Three of the officers were ordered into the house to keep the three people in the house from speaking with one another. One of the officers seized the items on the coffee table and then, with another officer, went into

the bedroom and began searching. During the search a rifle was found in plain view resting up against a wall in a closet which had no door attached. The two conducting the search were ordered to radio the serial number of the rifle into the station. It was reported stolen, so the defendant was taken into custody.

Upon the departure of the defendant to the police station the search continued. Within the closet a green sleeping bag was found. The officers unrolled the sleeping bag and found eight tinfoil packets and two plastic baggies, later found to contain heroin.

The defendant was charged in three separate informations with receiving stolen property (the rifle), trafficking in heroin and escape from custody. The defendant filed two pretrial motions: (1) a motion to suppress evidence; and (2) a motion to dismiss escape charges.

A pretrial hearing was held on January 24, 1977, and the motions were denied. Throughout the trial the motions were renewed and denied.

When the State sought to place the rifle into evidence, the defendant objected, stating his reason, but the objection was overruled.

The causes were tried to a jury, defendant was convicted of all charges and sentence was imposed. Notice of appeal was timely filed.

The Court of Appeals heard the matter and affirmed the convictions of the defendant on the grounds that the Court of Appeals was unable to review the contentions urged in regards to the search and seizure issues because neither Jones' affidavit nor the preliminary hearing transcript was included in the appellate record. The Court of Appeals asserted that the fact that the defendant renewed his motions during trial added nothing. The statement and the transcript were still missing from the appellate record and it was incumbent upon defense counsel to have included within the appellate record such matters as might be necessary for review by that court. The Court of Appeals concluded that, absent the statement and the transcript considered by the trial court, they had no basis upon which to review the appellant's contentions. We reverse in part and affirm in part.

■ I. In reviewing the trial court's decision on the issue raised by defendant's motion to suppress, the facts to be examined on appeal are those facts elicited before the trial court at the hearing on the motion to suppress. *State v. Deltenre*, 77 N.M. 497, 424 P.2d 782 (1966), *cert. denied*, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967). Once the trial court has denied a motion to suppress, the question on appeal is whether the facts before the trial court supported its decision as to the reasonableness of the arrest and seizure; and this decision will not be disturbed in the face of substantial evidence. *Deltenre, supra.*

In the case at bar the motion to suppress was again asserted at trial. Although it is true that the defendant did not attach the transcript and affidavit from the preliminary hearing, once he reiterated his motion in the trial proper, the Court of Appeals had a record from which to review such denial of the motion. In the defendant's brief-in-chief to the Court of Appeals *he indicated all the areas of the transcript which would support his motion to suppress.*

■ We, therefore, believe that the appellant fulfilled the requirement which is to insure that a correct and sufficient record is obtained for review on appeal. *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967). Our decision in this matter is limited to this set of circumstances since we believe that the trial record revealed the impropriety of the search. We therefore reverse the Court of Appeals on this point.

II. Upon the defendant opening the door for the officers, he was informed by one officer that they were requested to make a "welfare" inquiry about Hanks. It appears from the record that the defendant then turned toward the table and began to tamper with the items on the coffee table. At that point, after having seen the narcotics paraphernalia in plain view, the officers

entered the residence and took the items on the table into their possession—all over the objection of the defendant.

The defendant argues that the officers intruded on his property with the purpose of conducting a drug raid but under the guise of a "welfare" inquiry. He urges this Court not to apply the plain view doctrine since in order to invoke the doctrine the officers must lawfully be in a position to enable them to see what is allegedly in plain view. *State v. Ledbetter*, 88 N.M. 344, 540 P.2d 824 (1975).

■ It is our opinion that the circumstances presented here allowed the officers to lawfully enter upon the defendant's property in order to inquire as to the welfare of Hanks. The police were investigating the possibility of a serious crime being committed. It was reasonable for the officers to respond in this manner. The defendant voluntarily opened the door at the lawful request of the police, thus exposing the paraphernalia to the plain view of the officer. *See Wayne v. United States*, 115 U.S.App.D.C. 234, 318 F.2d 205 (1963).

■■ If an officer is lawfully in a position which exposes contraband or evidence to plain view, the evidence may be seized without benefit of a search warrant. Merely seeing those objects which are in plain view does not constitute a search. *State v. Blackwell*, 76 N.M. 445, 415 P.2d 563 (1966); *State v. Miller*, 80 N.M. 227, 453 P.2d 590 (Ct.App.1969), *cert. denied*, 80 N.M. 198, 453 P.2d 219 (1969). "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968). Because the paraphernalia on the coffee table was observed from the threshold of the doorway by the officers in plain view prior to their entry, the evidence was not obtained as a result of a search. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ III. The defendant next contends that the officer did not have probable cause to arrest. He urges that, if there was no probable cause, the arrest was unlawful, and therefore, the defendant cannot be charged with escape. However, since the officer was lawfully in a position which exposed the narcotics paraphernalia to the officer's plain view, this provided sufficient probable cause for the police to believe that a felony was being or had been committed. If an officer believes, and has good reason to believe, that a person has committed or is about to commit a felony, he may arrest without a warrant. This is to say that an officer must have probable cause to believe that a felony has been or is about to be committed and that the person arrested committed or is about to commit it. *State v. Darst*, 65 Wash.2d 808, 399 P.2d 618 (1965).

■ The probable cause essential to support an arrest without a warrant is a belief based upon facts within the knowledge of the arresting officer, persuasive enough to convince a judge that a cautious but disinterested man would also believe the arrested person guilty. *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ Accordingly, we hold that these officers, being lawfully in a position to see narcotics paraphernalia in plain view, established sufficient probable cause to support the defendant's arrest. The arrest being proper the escape conviction is upheld.

■ IV. Once the officers approached the house, they became aware that there were several individuals and a rifle within the dwelling. Therefore, after the officer made the arrest it was reasonable to make a search of the arrestee's person and the area into which the arrestee might leap to grab a weapon or evidentiary items. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The United States Supreme Court has stated:

A gun on a table or in a drawer in front of one who is arrested can be as danger-

ous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Id.*, at 763, 89 S.Ct. at 2040. However, that court refused to allow a search of any other room within the same house. They stated, "There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs . . . ." *Id.*

This concept has since been expanded in some jurisdictions. In *People v. Block*, 6 Cal.3d 239, 103 Cal.Rptr. 281, 499 P.2d 961 (1971), the Supreme Court of California extended the area in which an arresting officer may make a security risk search. That court held that, on the basis of the facts known to the arresting officer, he had probable cause to believe that after the arrest had been made, other suspects might be in the building, and therefore, he acted reasonably in making the search for them and in seizing the contraband which he found in plain view.

■ In the case at bar, we held that the officers were reasonably justified under these circumstances in making a security risk search of the other room to insure their safety. For their own protection, it is reasonable for arresting officers to look into other rooms of the house so as to dispel any fears they may have regarding their safety where the officers reasonably believe other persons may be hiding in those rooms. Consequently, entering the back bedroom in order to secure their own safety was reasonable, and upon entering said room the officers properly seized the rifle since it was in plain view. *See Block, supra.* A check of the rifle was made and it was reported stolen. Therefore, the defendant was properly charged with receiving stolen property.

V. Turning next to the illegal search, the record reflects that, after the defendant was arrested and taken to the police sta-tion, the officers which remained in the house continued searching the premises for additional evidence. Their search was not fruitless. They discovered a rolled-up sleeping bag in the closet. After unrolling it they found the heroin which the trial court refused to suppress.

In discussing the fourth amendment policy against unnecessary invasions of privacy, it was stated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) that informed and deliberate determinations of magistrates empowered to issue warrants are to be preferred over the hurried action of officers who may happen to make arrests. In *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) the United States Supreme Court strongly supported the preference to searches under a warrant and they indicated that in a marginal case a search under a warrant may be sustainable where without one it would fail. In speaking for the court in *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), Mr. Justice Jackson stated:

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. (Footnotes omitted.)

*Id.*, at 13–14, 68 S.Ct. at 369.

In the case at bar, once the defendant was arrested and his two visitors were properly restrained by the police for questioning, there was nothing to prevent the officers from acquiring a search warrant

for a further search in light of the evidence (the paraphernalia) which was exposed to them in plain view. To a detached magistrate there would have appeared probable cause to believe that heroin might be hidden on the premises. With a warrant this would have allowed the officers to legally uncover the heroin discovered during their warrantless search.

However, instead of procuring a search warrant, the officers made a warrantless search of the sleeping bag. Where officers have within their exclusive control personal effects belonging to the arrestee, a warrantless search of these items is illegal. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). It was stated in *Chadwick* that:

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, *a search of that property is no longer an incident of the arrest.* (Emphasis added.)

This warrantless search violated the defendant's fourth amendment right. *Katz, supra; See United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

Inasmuch as the heroin was seized illegally, it should have been excluded. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). *Mapp* places great emphasis on the deterrence of constitutional violations by eliminating the prosecutorial benefits stemming from these violations.

The distinction between allowing the rifle to be introduced into evidence and not the heroin is that the rifle was found in plain view from a position where the officers had a lawful right to be, whereas the heroin was found during a warrantless search of the sleeping bag when a search warrant could have easily been procured. Therefore, it was proper to introduce the rifle but reversible error not to suppress the heroin.

We find the other issues raised by the defendant to be without merit. The Court of Appeals is reversed and the cause is remanded to the district court for further proceedings not inconsistent herewith.

IT IS SO ORDERED.

McMANUS, C. J., and EASLEY, PAYNE and FEDERICI, JJ., concur.